STATE EX REL. FIRST NATIONAL BANK OF WISCONSIN RAPIDS, and another, Appellants, v. M & I PEOPLES BANK OF COLOMA, and others, Respondents.

*No. 75-730. Submitted on briefs January 5, 1978.—*
*Decided March 7, 1978.*
(Also reported in 263 N.W.2d 196.)

530

For appellant, The First National Bank of Wisconsin Rapids, the cause was submitted on the briefs of *Cole, Conway & Brazeau,* attorneys, of Wisconsin Rapids, and *Anderson, Fisher, Shannon, O'Brien & Rice,* of counsel, of Stevens Point.

For defendant-respondent, M & I Peoples Bank of Coloma, the cause was submitted on the brief of *James W. Nellen II, David J. Cannon* and *Michael, Best, & Friedrich* of Milwaukee.

For respondents, Banking Review Board of Erich Mildenberg, Commissioner of Banking, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, *Lowell E. Nass,* assistant attorney general, and *Robert A. Patrick,* of counsel, of Madison.

ABRAHAMSON, J. The First National Bank of Wisconsin Rapids, Wisconsin (First National) seeks a determination that it can raise by a complaint in quo warranto issues which could have been resolved in an action for review under the Administrative Procedure Act, ch. 227, Stats. The trial court determined that chapter 227 review was the exclusive remedy available to First National. We affirm.

## I.

On January 17, 1973, the M & I Peoples Bank of Coloma, Wisconsin (M & I) made application to the Office of the Commissioner of Banking, pursuant to sec. 221.04(1)(j), Stats.,[1] for permission to establish

---

[1] Sec. 221.04(1)(j), Stats. provides that state banks shall have the power . . .

"1. To establish and maintain a branch bank, upon approval by the commissioner and the banking review board, in a municipality other than that in which the home bank is located, if such municipality has no bank or branch bank at the time of application and if no bank or branch bank is located within a radius of 3 miles from the proposed site of the branch; however, such 3-mile limitation shall be computed by measuring the street or road mileage of that route which the commissioner and board find would be ordinarily and customarily traveled as the shortest distance between such bank or branch bank and the proposed site of the branch. A branch bank established under this paragraph shall be located in the same county in which the home bank is located or in a contiguous county if the location of such branch bank is no more than 25 miles from the home bank. Such branch banks shall be subject to all laws, rules and regulations applicable to banks generally. Application for the establishment of a branch bank under this paragraph shall be made to the commissioner on a form furnished by the commissioner.

"2. The limits set forth in subd. 1 may not apply to any emergency situation where the commissioner finds that a bank is failing and that it must be merged or consolidated with another bank and operated as a branch bank for the protection of the depositors

a branch bank facility in the Town of Rome, Wisconsin. First National was informed of M & I's application on March 1, 1973, and First National filed a formal protest.

On March 6, 1973, the Commissioner of Banking and the Banking Review Board approved M & I's branch bank application. First National was notified of this decision by certified mail the following day. Both parties agree that this notification triggered the thirty-day time period within which First National as a party aggrieved by the decision of the Banking Review Board was required to petition for judicial review.[2]

On March 13, 1973, First National served upon the Banking Review Board a "notice of appeal" requesting a rehearing before the Board. By letter dated April 6, 1973, the Banking Review Board informed First National that the Board's decision to approve the application was final and that the Board had no authority to rehear the case.

Within thirty days of receiving the letter regarding its "notice of appeal," but more than thirty days after receiving notification of the Board's final decision of March 6, 1973, First National filed a petition in the Dane County Circuit Court for chapter 227 review of the Board's decision. The circuit court dismissed First

of the failing bank and that the opportunity to merge or consolidate with the bank has been offered to and not accepted by all other banks within the geographical limits of subd. 1."

[2] Sec. 220.035(3), Stats., provides:

"Any final order or determination of the banking review board shall be subject to review in the manner provided in ch. 227."

Sec. 227.14, Stats. 1973, provides that "[e]very decision when made, signed and filed, shall be served forthwith by personal delivery or mailing of a copy to each party to the proceedings or to his attorney of record." Sec. 227.16(1), Stats. 1973, provides, in pertinent part, that proceedings for review shall be instituted "within 30 days after the service of the decision of the agency upon all parties as provided in section 227.14 . . . ."

National's petition for review on the ground that it was not filed within the thirty-day time period required by sec. 227.16(1), Stats. First National did not appeal this order.

On August 13, 1974, First National commenced a Declaratory Judgment action in the Circuit Court for Dane County, seeking to set aside the order by which the Commissioner of Banking and the Banking Review Board had approved M & I's application for a branch bank. The circuit court dismissed the action, holding that chapter 227 review was the exclusive remedy available to First National. First National attempted to appeal this order, but the appeal was defective; the matter was never decided on the merits.

The present action against M & I, the Banking Review Board, and the Commissioner of Banking was commenced on April 30, 1975, by First National and Farmers and Merchants Bank of Rudolph, Wisconsin (Farmers). The first cause of action in quo warranto pursuant to sec. 294.04, Stats.,[3] seeks a determination that M & I's franchise is null and void. As a second cause of action Farmers seeks a declaratory judgment pursuant to sec. 269.56, Stats., adjudicating the rights of the parties and interpreting the statute under which

---

[3] Sec. 294.04, Stats., provides:

"When action may be brought. (1) An action may be brought by the attorney general in the name of the state, upon his own information or upon the complaint of any private party, against the parties offending in the following cases:

"(a) When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state; or

"(b) When any public officer, civil or military, shall have done or suffered an act which, by the provisions of law, shall work a forfeiture of his office; or

"(c) When any association or number of persons shall act, within this state, as a corporation without being duly incorporated."

M. & I's application for a branch bank was granted. The following allegations were offered in support of both causes of action: (1) sec. 221.04(1)(j), Stats., under which M & I's application for a branch bank was granted, is unconstitutional because it fails to make adequate provision for notice to interested parties or for an opportunity for interested parties to be heard;[4] (2) the approval of M & I's application for a branch bank is void because the statute authorizing the approval is unconstitutional; and (3) even if sec. 221.04 (1)(j) were constitutional, M & I's application for a branch bank would be void, because the location allowed by the Banking Commissioner and the Banking Review Board directly contravenes the terms of sec. 221.04(1) (j), Stats.

---

[4] The parties appear to agree that the proceeding for granting an application for a branch bank is not a "contested case" within the meaning of sec. 227.01(2), Stats. 1973, which provides:

" 'Contested case' means a proceeding before an agency in which, after hearing required by law, the legal rights, duties or privileges of any party to such proceeding are determined or directly affected by a decision or order in such proceeding and in which the assertion by one party of any such right, duty or privilege is denied or controverted by another party to such proceeding."

Sec. 221.04(1)(j), Stats., thus does not require a hearing in a proceeding on the application for a branch bank.

First National asserts: (1) that the Commissioner of Banking received M & I's application on January 24, 1973, but that no bank received notice of the application until March 1, 1973, which was five days before the Banking Review Board meeting which approved the application; (2) that no competing bank ever saw a copy of the application or had an opportunity to examine or object to any part of its contents; (3) that First National's request for additional time to object and to be present at the meeting of the Banking Review Board was refused; (4) that no bank or any other interested party was permitted to introduce evidence or cross-examine any of the witnesses.

On December 31, 1975, an order was entered granting the motions of M & I, the Commissioner of Banking and the Banking Review Board to dismiss the complaint brought by First National. The trial court ruled that the issues raised by First National in its complaint in quo warranto could have been raised in a chapter 227 review and that First National's attempt to secure relief outside of that review must be denied.

## II.

First National contends that the circuit court erred in dismissing its complaint in quo warranto. In support of that contention First National argues (1) that the legislature cannot be said to have precluded recourse to remedies preserved in the Wisconsin Constitution where it has not done so specifically; (2) that the writ of quo warranto initiates a public proceeding to which the rules governing private proceedings cannot be held applicable; and (3) that constitutionally or jurisdictionally void administrative action may be attacked by means other than a petition for judicial review.

First National notes that Article VII, section 8 of the Wisconsin Constitution specifically vests the circuit courts with quo warranto jurisdiction and that neither the general banking laws nor the administrative procedure act (chapter 227) specifically precludes recourse to quo warranto review.

Article VII, section 8 of the Wisconsin Constitution provides as follows:

"The circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, and not hereafter prohibited by law; and appellate jurisdiction from all inferior courts and tribunals, and a supervisory control over the same. They shall also have the power to issue writs of habeas corpus, mandamus, injunction, quo

warranto, certiorari, and all other writs necessary to carry into effect their orders, judgments and decrees, and give them a general control over inferior courts and jurisdictions."[5]

Sections 221.04(1)(j) and 220.035(3), Stats., read together, provide that an administrative decision approving an application for a branch bank is subject to judicial review under chapter 227. Section 221.04(1)(j) provides that an application for a branch bank by a state chartered bank must be approved by both the Commissioner of Banking and the Banking Review Board, and sec 220.035(3) provides that "[a]ny final order or determination of the banking review board shall be subject to review in the manner provided in ch. 227."

First National argues that because the legislature did not *specifically* state in section 220.035(3) or in chapter 227, Stats., that it intended to preclude quo warranto review of decisions of the Banking Review Board, such quo warranto review necessarily remains available. M & I on the other hand notes that sec. 220.035 (3), Stats., provides that "[a]ny final order of the banking review board *shall be* subject to review" pursuant to the provisions of chapter 227. This mandatory language, argues M & I, is clear evidence of a legislative purpose to require parties who seek judicial review of decisions of the Banking Review Board to abide by the provisions of the administrative procedure act.

In a continuing line of cases this court has set forth the general principle that where a statute specifies a

---

[5] Art. VII, sec. 8 was amended April 5, 1977, to read as follows: "Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may prescribe by law. The circuit court may issue all writs necessary in aid of its jurisdiction."

method of review, the method so prescribed is exclusive.[6] We have not excluded from the operation of this rule proceedings initiated by the writs of mandamus and certiorari although these writs, like quo warranto, are preserved in Article VII, section 8 of the Wisconsin Constitution and are nowhere specifically excepted from the operation of the administrative procedure act. In *Underwood v. Karns*, 21 Wis.2d 175, 124 N.W.2d 116 (1963), petitioner, whose motor vehicle operator's license had been suspended pursuant to sec. 344.14, Stats., commenced mandamus proceedings for the purpose of compelling the Commissioner of the Motor Vehicle Department to reinstate his driving privileges. Citing our previous holding in *Perkins v. Peacock*, 263 Wis. 644, 58 N.W.2d 536 (1953), we reversed the trial court's judgment that the writ should issue:

"Sec. 344.03, Stats., sets out the procedure for obtaining judicial review of the commissioner's acts. That section provides that any person aggrieved by any action of the commissioner may, within ten days after notice thereof, petition for review in the circuit court as provided in the Administrative Procedure Act (sec. 227.16). *Where a statute relating to an administrative agency provides a direct method of judicial review of agency action, such method of review is generally re-*

[6] *See, e.g., Cobb v. Public Service Comm.,* 12 Wis.2d 441, 107 N.W.2d 595 (1961); *R. T. Madden, Inc. v. ILHR Dept.,* 43 Wis.2d 528, 169 N.W.2d 73 (1969); *Town of Caledonia v. Public Service Comm.,* 56 Wis.2d 720, 202 N.W.2d 912 (1973); *State ex rel. Miller v. Manders,* 2 Wis.2d 365, 376, 86 N.W.2d 469 (1957); *Nick v. State Highway Comm.,* 13 Wis.2d 511, 518a, 109 N.W.2d 71, 111 N.W.2d 95 (1961); *Kosmatka v. DNR,* 77 Wis.2d 558, 567, 253 N.W.2d 887 (1977); *Adoption of Shawn,* 65 Wis.2d 190, 198, 222 N.W.2d 139 (1974); *Langland v. Jt. County School Comm.,* 12 Wis.2d 557, 107 N.W.2d 503 (1961); *Superior v. Committee on Water Pollution,* 263 Wis. 23, 56 N.W.2d 501 (1953).

The legislature can by specific statute not embodied in ch. 227, Stats., prescribe other methods of judicial review. *Cobb v. Public Service Comm., supra.*

*garded as exclusive, especially where the statutory remedy is plain, speedy, and adequate. . . .*

"In *Perkins v. Peacock* (1953), 263 Wis. 644, 649, 658, 58 N.W.2d 536, a certiorari proceeding, this court held that sec. 40.303(9), Stats. 1949, which granted aggrieved persons the right to appeal from any order of the county school committee within thirty days, was the exclusive remedy for review of such order. . . .

". . .

"*Since [the petitioner in this case] could have obtained a review under sec. 344.03, Stats., at the time of the suspension,* mandamus will not lie. . . .

"We hold that the remedy provided by sec. 344.03, Stats., is exclusive. . . ." 21 Wis.2d at 179–181 [emphasis added].

Under our holdings in *Underwood* and *Perkins,* First National cannot avoid the requirements of chapter 227 merely because the legislature did not, in specific terms, preclude quo warranto review of Banking Review Board decisions. However, First National argues that the rule announced in *Underwood* and *Perkins* is not applicable to a quo warranto action. First National contends that while the creation of a private appeals procedure under chapter 227 may well warrant the preclusion of attack upon an agency determination by "private" remedies such as mandamus and certiorari, it is irrelevant to the issue of the permissibility of attack upon an agency determination by an action in quo warranto. Quo warranto, argues First National, is not a private remedy designed to protect purely private rights; it is "an entirely distinct" public remedy,[7] pursuant to

---

[7] Quo warranto, one of the "extraordinary" common law remedies, is a civil proceeding brought for the purpose of determining whether authority exists to justify or authorize certain acts of a public character or interest. "Originally the proceeding of quo warranto was a criminal one instituted by the crown, the purpose of which was to find out, in the course of a formal inquiry, whether or not persons or corporations were exercising a privilege or franchise illegally, or if persons who had no right to do so

540

which the public should be permitted to question the validity of M & I's branch bank franchise.

We do not agree that *Underwood* and *Perkins* can be distinguished from the case at bar upon the ground that quo warranto is a remedy "entirely distinct" from the remedies of mandamus and certiorari. Traditionally, all of the extraordinary common law remedies—quo warranto, mandamus, certiorari, prohibition, and habeas corpus—have been thought to share an essentially public character. *Income Tax Cases*, 148 Wis. 456, 500, 134 N.W. 673 (1912).[3]

were occupying some public office . . . . In time an extensive change in the character of the proceeding by quo warranto came about. The distinctively criminal character of the proceeding disappeared, so that the proceedings became virtually civil proceedings. Nevertheless they retained their original character of being 'extraordinary', because the proceeding was available only to the crown. For the exercise without authority of the corporate franchise, or the usurpation of a public office, were still regarded as being of primary importance only to the crown as representing the state, and not a matter of concern to private individuals . . . . In time still another extensive change in the proceeding was developed, so that it became available as a sort of private action or suit. Nevertheless it is proper to refer to the proceeding as extraordinary, for notwithstanding this second modification, the suit still had to be brought in the name of the state. . . . [T]he suit still is in form a suit by the state, and as a matter of fact it cannot be maintained solely and exclusively by a private citizen to litigate his exclusively private affairs." Kinnane, *Anglo American Law* 662–664 (2d ed. 1952), reprinted in Cribbet, *Judicial Remedies* 173–75 (1954).

[3] The extraordinary common law remedies "were very specialized in character and were never used in the routine of ordinary civil litigation. In fact they were seldom used where only a private interest was involved but were concerned with the larger public interests . . . ." Cribbet, *Judicial Remedies* 173 (1954).

The historically public character of all of the extraordinary remedies would seem to weaken First National's argument that quo warranto stands apart from the other remedies preserved in

However, even if it could be said that the public character of an action in quo warranto distinguishes it from the other remedies preserved in Article VII, Section 8 of the Wisconsin Constitution, it would not follow that the rule of *Underwood* and *Perkins* should not apply where an agency determination is collaterally attacked by an action in quo warranto. The general rule, as we have noted, is that the statutory method of review is exclusive where that method permits adequate resolution of the issues raised. By arguing that this rule is "irrelevant" where the public's interest is asserted, First National impliedly presents the proposition that statutory review under ch. 227, Stats., does not permit adequate resolution of issues in which the public has an interest. Yet the public inquiry which First National seeks to initiate by this action in quo warranto is directed toward resolution of precisely those issues which First National could have asserted, as a private litigant, in an action for statutory review, namely whether the Board's action was valid under the constitution and statutes. Because the public as well as the private aspect of the claim First National now seeks to assert in a quo warranto action was susceptible to

Art. VII, sec. 8, of the Wisconsin Constitution. It is true, as First National asserts, that only quo warranto must be brought "in the name of the state." Sec. 294.04(1), Stats. *Boerschinger v. Elkay Enterprises, Inc.*, 26 Wis.2d 102, 110, 132 N.W.2d 258, reh. denied 26 Wis.2d 102, 133 N.W.2d 333 (1965). Nonetheless, the public does retain as interest in the other extraordinary remedies. For example:

"[A proceeding in prohibition] may appropriately be called an 'extraordinary' one, for while private litigants may desire that the writ of prohibition issue, still that writ is issued not only to settle the private suit between private parties, but in the public interest of preventing an abuse of jurisdiction by a court or other adjudicative body." Kinnane, *Anglo American Law* 665–666 (2d ed. 1952), reprinted in Cribbet, *supra*, at 207.

review under ch. 227, Stats., we hold that First National's claim in quo warranto cannot be excepted from the general principle that the method of review prescribed by statute is exclusive.

### III.

The First National further contends that the method of review prescribed by chapter 227 should not be held exclusive where administrative agency action is challenged on constitutional or jurisdictional grounds.

We discussed previously this court's adoption of the general principle that where a method of review is prescribed by statute, the prescribed method is exclusive. It is difficult to quarrel with a rule which requires the timely execution of prescribed procedures. Nonetheless, our cases demonstrate that the door is not entirely closed to the possibility that a petition seeking judicial relief by a method other than that prescribed by statute may be sustained. We noted this possibility in *Perkins v. Peacock, supra,* 263 Wis. at 658, where we stated that whether a statutory remedy of appeal is exclusive depends upon "whether such right of appeal is adequate to permit review" of the matters raised, and in *Underwood v. Karns, supra,* 21 Wis.2d at 180, where we stated that the prescribed method of review is generally regarded as exclusive where that method is "plain, speedy, and adequate." In *Langland v. Joint County School Comm.,* 12 Wis.2d 557, 559, 107 N.W.2d 503 (1961) we said that "in all but 'exceptional' cases, the appeal was to be the exclusive remedy."

Thus the rule that the statutory method of review is exclusive is a rule of policy, convenience and discretion. It is improper to couch the rule in terms of the power or jurisdiction of the court. The rule is based on the strong public interest in creating effective ad-

ministrative agencies, in insuring finality of agency determinations and certainty in legal relations; in establishing orderly judicial processes; in preventing a multiplicity of suits; and in achieving economy of judicial time. Balanced against these considerations is a party's right to obtain a judicial forum and a just, equitable decision on the merits. The court must apply the rule with an understanding that the legislature has created chapter 227 to afford a unified scheme of judicial review.[9]

First National does not complain that review pursuant to chapter 227 was not "plain, speedy and adequate." Clearly, statutory judicial review was speedy; indeed the present quo warranto action was initiated only after the time for direct review had expired. The statutory review remedy was also "plain" and "adequate"; the scope of review available under secs. 227.20(1)(a) and (b), Stats. 1973, specifically includes challenges to decisions "contrary to constitutional rights or privileges" and decisions "in excess of the statutory authority or jurisdiction of the agency." As M & I correctly contends, "[e]very issue that First National raised in its action in quo warranto was susceptible to remedy pursuant to ch. 227, Stats."

---

[9] *Muench v. Public Service Comm.*, 261 Wis. 492, 510, 511, 53 N.W.2d 514, 55 N.W.2d 40. *See also* Wis. Legislative Counsel, 1955 Report, Administrative Rule Making, Vol. II, Part II, Dec. 1954, p. 119; Boles, *Judicial Review of Conservation Rules in Wisconsin*, 39 Marq. L. Rev. 218 (1956); Hoyt, *The Wisconsin Administrative Procedure Act*, 1944 Wis. L. Rev. 214, 226–230.

It is generally recognized that a system of judicial remedies should be simple and clear and that the simplest system for review of administrative action is one under which any reviewable administrative action may be reviewed in a designated court by a petition for review. A multitude of remedies forcing counsel and courts to determine which procedure is correct is viewed as cumbersome and may defeat the parties' rights to a judicial hearing on the merits. 3 Davis, *Administrative Law*, secs. 24.06, 24.07 (1970 Suppl.); 2 Cooper, *State Administrative Law* 654 (1965).

We have previously met the contention, raised here by First National, that the method of review prescribed by statute should not be held exclusive where administrative agency action is challenged on jurisdictional grounds. In *Perkins v. Peacock, supra,* this court was "faced with the crucial question argued on this appeal of whether jurisdictional defects in the proceedings of a County School Committee . . . may be raised by certiorari or whether the statutory method of appeal is the exclusive method to review such proceedings." 263 Wis. at 651. Because the applicable statutory appeal procedure "embrace[d] attacks based upon jurisdictional defects in the proceedings," 263 Wis. at 655, we refused to allow attack by certiorari.

The same principle should govern when an administrative agency action is attacked on constitutional grounds.

Sec. 227.20(1)(a), Stats. 1973, provides that the court "may affirm, reverse or modify a decision of the agency if the decision is" [c]ontrary to constitutional rights or privileges. . . ." Thus chapter 227 recognizes a party's right to attack an administrative decision by challenging the constitutionality of the legislative enactment which authorizes the agency to act or by asserting that the administrative proceedings deprived him of due process. 2 Cooper, *State Administrative Law,* pp. 683, 684.[10] We have previously held that

---

[10] Our court has consistently recognized that judicial review of the action of an administrative agency is one of the checks and balances to achieve a proper balance between government regulation and the protection of personal and property interests from arbitrary action.

If judicial review of right is not provided under ch. 227, Stats., or any other statute, the action of the administrative agency may be reviewed by way of certiorari. *Stacy v. Ashland Co. Dept. Pub.*

parties must exhaust administrative remedies before seeking judicial review of allegedly unconstitutional administrative agency action if the action challenged can be remedied in the administrative agency. In *Nodell Inv. Corp. v. Glendale*, 78 Wis.2d 416, 425–26, 254 N.W. 2d 310 (1952), we stated that:

". . . Our court and federal and state courts have been willing to assume jurisdiction of a case, notwithstanding a party's failure to exhaust administrative remedies, where the court finds that the reasons supporting the exhaustion rule are lacking. In *Kmiec v. Town of Spider Lake*, 60 Wis.2d 640, 645, 211 N.W.2d 471 (1973), this court recognized a 'well-defined distinction in applying this judicial policy [of exhaustion of remedies] to the statutory administrative remedies in zoning cases. . . . [A] challenge to the constitutional validity of a zoning ordinance presents a question of law. Such a challenge may properly be made by commencing an action for declaratory judgment and the doctrine of exhaustion of remedies is not applicable. . . .' The reason for this exception is that an appeal to the administrative agency would not have afforded the party adequate relief since the administrative agency has no right to repeal or declare unconstitutional zoning ordinances enacted by the legislative body from which the board derives its existence."

In *Nodell* the allegedly unconstitutional action challenged was subject to remedy in the administrative agency, and we held that judicial relief could not be granted if the available administrative remedies had not been exhausted within the time period provided by statute.[11] We

---

*Welfare*, 39 Wis.2d 595, 601, 159 N.W.2d 630 (1968); *Outagamie Co. v. Smith*, 38 Wis.2d 24, 34, 35, 155 N.W.2d 639 (1968).

[11] "The usual exhaustion case is one where review is sought prematurely. To deny review is simply to require the plaintiff further to pursue the administrative process or to await its conclusion. Considerations of administrative efficiency are at stake. But if the administrative remedy is no longer available to him [*i.e.* if the time for administrative relief has expired], a person, if exhaustion is invoked, suffers a loss or right of defense."

find the principle relied upon in *Nodell* applicable in the instant context. Section 227.20(1)(a), Stats. 1973, authorized the circuit court to determine the constitutionality of the statute under which M & I's application for a branch bank was granted. Because First National was not denied adequate remedy under chapter 227, it should not be permitted to use another procedure for review.

We have noted that there may be "exceptional cases" in which the method of review prescribed by statute would not be held to be exclusive. In *Perkins v. Peacock, supra,* the example given of an exceptional case was "where statutory notice was not given and the aggrieved party did not receive actual notice until the time for appeal had expired." 263 Wis. at 658. First National does not allege that the instant case falls within such exception. To the contrary, First National states that it received the statutory notice by certified mail the day after the Commissioner of Banking and the Banking Review Board approved M & I's branch bank application. Nor does First National allege that this case is in any other way an "exceptional case" that should be treated outside the general rule.

The circuit court properly concluded that under the circumstances of this case, chapter 227 review was the exclusive remedy available to First National.

*By the Court.*—Order affirmed.

DAY, J., took no part.

L. Jaffe, *Judicial Control of Administrative Action* 450 (1965). *Nodell* spoke to the principle of exhaustion as it applies after the time for administrative relief has expired. This application of the exhaustion principle brings about the same result as does application of the principle that the method of review prescribed by statute is exclusive. Both deny judicial relief to the party who has failed to follow prescribed procedures.