Frank D. KAISER, Ralph Cottrill, Donald Schwantz and Thomas H. Randall, Jr., Plaintiffs-Respondents,

v.

CITY OF MAUSTON and City of Mauston Lake Improvement District, Defendants-Appellants.†

Court of Appeals

*No. 79–1759. Submitted on briefs April 21, 1980.—*
*Decided September 19, 1980.*
(Also reported in 299 N.W.2d 259.)

† Petition to review denied.
BEILFUSS, C.J., took no part.

For the defendants-appellants the cause was submitted on the briefs of *Ray C. Feldman, Jr.* of Mauston.

For the plaintiffs-respondents the cause was submitted on the brief of *Frederick J. Wagner* and *Langer & Wagner* of Baraboo.

Before Gartzke, P.J., Bablitch, J., and Dykman, J.

DYKMAN, J.   This is an appeal from the grant of a permanent injunction against the City of Mauston and the City of Mauston Lake Improvement District.[1]   The

[1] The defendants' notice of appeal states that the appeal was from the court's order of October 26, 1979, making permanent the court's temporary injunction. A judgment setting forth the terms of the injunction was entered shortly after the order. An

defendants have been enjoined from giving effect to a lake rehabilitation plan, created in accordance with ch. 33, Stats., which would involve drawing down and dredging Lake Decorah in the City of Mauston. The relevant facts were stipulated by the parties.

On August 25, 1965, Wisconsin Power & Light Co. gave a quitclaim deed to the City of Mauston which purported to convey certain lands lying under and adjacent to Lake Decorah.[2] One of the deeded parcels consisted of 40 acres in the Town of Lindina.[3] The eastern portion of this parcel is submerged by Lake Decorah.

Charles Curran has record title to the 40 acres. He pays real estate taxes to the Town of Lindina on 37½ of the acres.[4] Wisconsin Power & Light Co. has never had record title to the property, although it apparently acquired a flowage easement to a portion of the property through prescription.

On February 3, 1976, the Mauston Common Council passed Resolution No. 76–1, creating a public inland lake protection and rehabilitation district pursuant to sec. 33.23, Stats., "to include the incorporated limits of the City of Mauston and on all lands owned by the City

examination of the order indicates that the judge intended that it be a final order. We will thus review the case, including the final judgment that was entered, although the defendants did not specifically appeal from that judgment. *Fredrick v. City of Janesville*, 92 Wis.2d 685, 688, 285 N.W.2d 655, 657 (1979).

[2] A correction quitclaim deed dated February 21, 1967, which included the same property, was subsequently given to the City of Mauston.

[3] Wisconsin Power & Light Co. deeded several 40-acre parcels to the City of Mauston by quitclaim deed. For the purpose of this action, the parties stipulated that only one parcel need be considered.

[4] Although it is not clear from the record why no taxes are paid on the remaining acreage, the abstract to the property shows that a portion of the property was condemned for a road. The plaintiffs' brief suggests that this accounts for the 2½ acres on which taxes are not paid.

immediately adjacent thereto." This district was named the City of Mauston Lake Improvement District. On August 5, 1976, the city passed Ordinance No. 595, annexing that part of the lake bed of Lake Decorah that was quitclaimed to it by Wisconsin Power & Light Co. The ordinance provided that the annexed lands were detached from the Town of Lindina.

The City of Mauston Lake Improvement District formulated a plan for the rehabilitation of Lake Decorah. The plan involved drawing down the waters of the lake and removing about 300,000 cubic yards of silt from the lake bottom. The estimated cost of this project would exceed $500,000, to be financed by local funds with grants to be obtained from the federal and state governments.

The lake improvement district submitted the rehabilitation plan to the Department of Natural Resources (DNR) for approval and applied for DNR permits to lower the water levels on Lake Decorah and to dredge the lake bed. A hearing was held on April 9, 1979, and the hearing examiner issued his findings of fact, conclusions of law, and order on April 30, 1979. The department found that the issuance of a dredging permit would be consistent with the public interest, as expressed in sec. 33.001, Stats. Accordingly, an order was entered approving the district's rehabilitation plan, and the requested permits were issued.

On May 9, 1979, the plaintiffs in this action petitioned for a review of the DNR's decision under ch. 227, Stats. The plaintiffs also petitioned for, and received, a temporary stay of the DNR's order of April 30, 1979. An administrative review hearing was held on June 8, 1979, before Judge Wiese. The court did not continue the stay.[5]

---

[5] Although the petition and the stay are part of the record, the ultimate outcome of the administrative review hearing is not. We rely on the defendants' brief for this information.

On June 1, 1979, the plaintiffs commenced this action for a judgment declaring that the lake improvement district was not validly created, and for an injunction against drawing down the waters of Lake Decorah. A temporary restraining order was issued on that date and, after hearings and a pretrial conference, was from time to time continued until the trial court entered its judgment.

The case was tried on stipulated facts. The plaintiffs' contention was that the lake improvement district was never validly created. The city could not annex by ordinance that portion of Lake Decorah lying in the Town of Lindina unless it owned the annexed land, the plaintiffs argued, and it did not own the land because the deed from Wisconsin Power & Light Co. did not convey it. The plaintiffs interpreted sec. 33.23, Stats., to require a city to encompass all of the frontage of a lake before it could establish a lake rehabilitation district. Because the city did not validly annex that portion of Lake Decorah which lies in the Town of Lindina, the plaintiffs concluded, the lake improvement district was illegally created and all of its actions are accordingly void.

The trial court agreed with the plaintiffs' position and on October 26, 1979, entered a declaratory judgment in favor of the plaintiffs and enjoined the defendants from drawing down or dredging Lake Decorah. The present appeal was taken from that judgment.

The many legal questions which have been raised by the parties can be categorized into the following five issues:

(1) Was the trial court the proper forum in which to bring this action?

(2) Has the passage of time barred the plaintiffs from pursuing this remedy?

(3) Do the plaintiffs have standing to bring this action?

(4) Does the fact that the city does not encompass a portion of Lake Decorah render the resolution creating the lake improvement district invalid?

(5) Did the trial court exceed its authority in enjoining the lake improvement district from taking further action as a public body?

(1) *Proper Forum*

A hearing was held before the DNR on September 21, 1978, on three issues: approval of the lake rehabilitation plan,[6] the issuance of a permit to lower the water level of Lake Decorah,[7] and the issuance of a permit to dredge the lake bed.[8] The defendants argue that the DNR has exclusive jurisdiction over matters pertaining to the lake rehabilitation plan. They assert that the plaintiffs' attack should not have been advanced in court, but should rather have been made at the administrative hearing. Since the hearing examiner approved the lake rehabilitation plan, the defendants contend that further review is available only pursuant to ch. 227, Stats., and that the court accordingly had no jurisdiction to hear this matter.

As a general rule, when the legislature has provided that a particular agency proceeding is subject to a statutory method of review, that method of review is exclusive if it permits an adequate resolution of the issues raised. *St. ex rel. 1st Nat. Bank v. M & I Peoples Bk.*, 82 Wis.2d 529, 541, 263 N.W.2d 196, 202 (1978). We find no statute which requires the DNR's decisions on any of the three issues presented at the hearing to be reviewed under ch. 227, Stats. The defendants suggest that such a requirement is embodied in sec. 30.18(9),

---

[6] The Department of Natural Resources' approval is required by sec. 33.14, Stats., and Wis. Adm. Code, sec. NR 60.10.

[7] This permit is required by sec. 31.02, Stats.

[8] This permit is required by sec. 30.20, Stats.

Stats.[9] That statute relates to the diversion of surplus water from streams and is inapplicable to this situation. No similar requirement of ch. 227 review is found in the statutes pertaining to lowering the lake's water level, dredging, or approval of the rehabilitation plan.

Although ch. 227, Stats., is not the exclusive method of review in this case, the defendants further suggest that the plaintiffs were required to exhaust their administrative remedies before coming to court. It is clear that the plaintiffs were either present at the DNR hearing or had notice of it. The defendants contend that the plaintiffs should have raised the issue of the validity of the lake improvement district there, rather than commencing an independent action for declaratory judgment. Because the plaintiffs failed to exhaust their administrative remedies, the defendants suggest, they should be barred from subsequently raising this issue in court.

The doctrine of exhaustion of remedies is not jurisdictional.[10] It is "a doctrine of judicial restraint which the legislature and the courts have evolved in drawing the boundary line between the administrative and judicial spheres of activity." *Nodell Inv. Corp. v. Glendale*, 78 Wis.2d 416, 424, 254 N.W.2d 310, 315 (1977). The doctrine requires that judicial relief be denied until all administrative remedies have been exhausted by the parties. *Nodell Inv. Corp.*, 78 Wis.2d at 424, 254 N.W.2d at 315. Because the plaintiffs had the opportunity to present their argument at the DNR hearing and at the ch. 227 review hearing, defendants' contention that the plaintiffs failed to exhaust their remedies might seem to have merit.

---

[9] Section 30.18(9), Stats., provides:

Any order or determination made by the department is subject to judicial review as prescribed in ch. 227.

[10] *See M & I Peoples Bk.*, 82 Wis.2d at 542, 263 N.W.2d at 202.

We cannot, however, blindly apply the doctrine of exhaustion of administrative remedies. Each case must be considered on its facts[11] with an understanding of the premises underlying the doctrine. These premises are: (1) That an administrative remedy is available to the party on his own initiative; (2) That it is available relatively rapidly; and, (3) That the remedy will protect the party's claim of right. *Nodell Inv. Corp.*, 78 Wis.2d at 424, 254 N.W.2d at 315. Where these premises do not apply to the specific facts of a case, the court will assume jurisdiction despite the party's failure to exhaust remedies. *Nodell Inv. Corp.*, 78 Wis.2d at 425–26, 254 N.W.2d at 316.

The plaintiffs argue that they were not required to exhaust administrative remedies in this case because there is no foundation for the doctrine's third premise under the facts of this case: the administrative remedy could not give them their desired relief. This is so, they argue, because their challenge is based on an illegal annexation which in turn made the formation of the lake improvement district illegal. The plaintiffs contend that the DNR does not have authority to pass on the legality of these actions, and that it would thus be fruitless to press these issues before the agency.

It is "a basic statement of law" that " 'administrative agencies have only such powers as are expressly granted to them or necessarily implied and any power sought to be exercised must be found within the four corners of the statute under which the agency proceeds.' " *State ex rel. Farrell v. Schubert*, 52 Wis.2d 351, 357, 190 N.W.2d 529, 532 (1971), *vacated on other grounds sub nom. Farrell v. Schmidt*, 408 U.S. 915 (1972). We find no express authorization in ch. 33, Stats., or elsewhere

[11] *See M & I Peoples Bk.*, 82 Wis.2d at 542–43, 263 N.W.2d at 202.

in the statutes for the DNR to pass on the legality of a municipal annexation ordinance.

In order to find that a power is implied under the terms of a statute, we must find by fair implication that the power was intended to be incident to and included in the authority that was expressly conferred. *Farrell,* 52 Wis.2d at 358, 190 N.W.2d at 532. Any reasonable doubt must be resolved against the existence of the implied power. *Farrell,* 52 Wis.2d at 358, 190 N.W.2d at 532; *State (Dept. of Admin.) v. ILHR Dept.,* 77 Wis.2d 126, 136, 252 N.W.2d 353, 357–58 (1977).

The DNR is bestowed with broad powers to regulate in the area of water resources. *See, e.g.,* sec. 31.02, Stats. The power to regulate the use of lakes, however, is far removed from the power to pass on the legality of a local annexation ordinance.

*Kmiec v. Town of Spider Lake,* 60 Wis.2d 640, 646, 211 N.W.2d 471, 473–74 (1973), held that administrative agencies which review zoning ordinances "are clothed with no right to repeal or declare unconstitutional zoning ordinances enacted by the legislative body . . . ." Thus, seeking review by the administrative agency would have afforded no relief to the plaintiffs in that case. The court in *Master Disposal v. Vil. of Menomonee Falls,* 60 Wis.2d 653, 659, 211 N.W.2d 477, 480 (1973), bolstered the holding in *Kmiec* by noting that exhaustion was not required in *Kmiec* because the validity of an ordinance is a question of law which the administrative agency was "ill-equipped to decide."

We are faced with a similar situation in the present case. The question of whether the city's annexation of the lakefront by ordinance was legal is a question of law. The DNR, like the zoning board in *Kmiec,* 60 Wis.2d 640, 211 N.W.2d 471, is clothed with no right, express or implied, to determine whether the annexation procedure was legal. Raising this issue before the admin-

istrative agency would have been of no help to the plaintiffs, because the DNR lacks authority to make the determination which they seek. The legality of the annexation is soley a question of law which the agency is ill-equipped to decide. The agency's expertise is not an important factor in addressing this question.[12] Recourse to the administrative agency would thus have been a futile or useless act.[13]

For these reasons, we hold that under these circumstances the plaintiffs were not required to seek review of the annexation before the DNR prior to bringing this action for declaratory judgment.

The defendants next contend that the declaratory judgment action amounts to a collateral attack on the decision of the administrative agency, and that collateral attacks must be dismissed. For the reasons stated above, we find that the plaintiffs could not have received adequate relief from the DNR and thus were not required to address the issue of the legality of the annexation in that forum. Consequently, the attack on the annexation proceeding in a subsequent declaratory judgment action was not collateral.[14]

The defendants' final jurisdictional argument is that the plaintiffs are challenging a local resolution, and that

---

[12] *Nodell Inv. Corp.*, 78 Wis.2d at 425 n. 12, 254 N.W.2d at 316 n. 12.

[13] *Nodell Inv. Corp.*, 78 Wis.2d at 425 n. 12, 254 N.W.2d at 316 n. 12.

[14] A related issue is whether the plaintiffs' attack on the resolution creating the lake improvement district is a collateral attack on the city's annexation ordinance, and if so, whether such an attack is prohibited. This issue was not raised by the parties in the trial court or on appeal. As a general rule, this court will not consider issues not raised in the trial court. *County of Columbia v. Bylewski*, 94 Wis.2d 153, 171, 288 N.W.2d 129, 138–39 (1980). Since we have not been asked to review this issue on appeal we will not address it.

the exclusive method of reviewing the ordinances or resolutions of a local legislative body is through certiorari. This argument is unsupported by authority.[15] A declaratory judgment has long been held to be a proper method of challenging the validity of an ordinance.[16] *Town of Fond du Lac v. City of Fond du Lac*, 22 Wis.2d 525, 532, 126 N.W.2d 206, 210 (1964).

(2) *Passage of Time*

The defendants advance four arguments with a central theme: that the passage of time from the creation of the lake improvement district to the commencement of this action bars the plaintiffs from seeking a declaratory judgment. The first of these arguments is that the resolution creating the lake improvement district can only be challenged by certiorari, and that the writ must be sought within six months of the enactment of the ordinance.[17] Because we hold that a declaratory judgment action is a proper method of challenging the validity of the resolution, the certiorari time limit does not apply to this case.

[15] The case cited by defendants, *State ex rel. Hippler v. Baraboo*, 47 Wis.2d 603, 178 N.W.2d 1 (1970), demonstrates only that certiorari is one method of reviewing municipal ordinances. It does not hold that it is the exclusive method.

[16] Section 806.04(2), Stats., provides: "Any person . . . whose rights, status or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder."

[17] *Fireman's Annuity and Benefit Fund v. Krueger*, 24 Wis.2d 200, 128 N.W.2d 670 (1964). The court used the six-month time for taking an appeal as one of the reasons for holding that review of petitions for certiorari must be taken within six months. Whether sec. 808.04(1), Stats., has altered the *Fireman's* holding need not be decided at this time because the parties have not raised that question.

The defendants next argue that this action is barred by sec. 62.25(1), Stats.,[18] which provides that no claim may be brought against a city unless written notice of the claim is given to the city within 120 days of the happening of the event that gives rise to the claim, and no action may be brought until six months after service of notice that the claim has been disallowed. This statute applies to claims for money damages. It does not apply to a claim for equitable relief, such as the request for an injunction in the present case. *Milwaukee v. Milwaukee Civic Developments, Inc.*, 71 Wis.2d 647, 655–56, 239 N.W.2d 44, 49 (1976); *Hasslinger v. Village of Hartland*, 234 Wis. 201, 205, 290 N.W. 647, 649 (1940).

The defendants argue, however, that the amendment of this statute by ch. 285, Laws of 1977, to include any claim *or cause of action* was intended to broaden the

---

[18] Section 62.25(1), Stats., provides:

No action may be brought or maintained against a city upon a claim or cause of action unless the claimant complies with s. 895.43.

Section 895.43(1), Stats., provides:

No action may be brought or maintained against any . . . political corporation, governmental subdivision or agency thereof . . . upon a claim or cause of action unless:

(a) Within 120 days of the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the . . . political corporation, governmental subdivision or agency . . . . [A]nd

(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant . . . corporation, subdivision or agency and the claim is disallowed. Failure of the appropriate body to disallow within 120 days after presentation is a disallowance. Notice of disallowance shall be served on the claimant . . . . No action on a claim against any defendant . . . corporation, subdivision or agency . . . may be brought after 6 months from the date of service of the notice, . . . .

reach of the statute to include suits seeking equitable relief.[19] If we were to adopt this interpretation of the statute, the right to injunctive relief against enforcement of a municipal ordinance would be meaningless. The 120-day waiting period during which plaintiffs could not obtain an injunction to enforce their rights could lead to irreparable damage.

The prefatory note to ch. 285, Laws of 1977, makes clear that the purpose of the change in the law was merely to consolidate and make uniform the various statutory procedures for bringing claims against counties, cities, school districts, and similar entities. Had the legislature intended to change the long-standing judicial construction of this statute, we believe it would have done so more plainly than by this amendment.

The defendants' third contention is that this action is barred by sec. 66.021(10)(a), Stats.,[20] which provides that no action may be commenced to challenge the validi-

[19] The former statute, sec. 62.25(1), Stats. (1975), provided:

(a) No action shall be maintained against a city upon a claim of any kind until the claimant shall first present his claim to the council and it is disallowed in whole or in part. Failure of the council to pass upon the claim within 90 days after presentation is a disallowance.

. . . .

(c) The clerk shall cause to be served on the claimant notice of disallowance . . . .

. . . .

(e) Disallowance by the council shall bar any action founded on the claim unless brought within 6 months after service of notice of disallowance, . . . .

[20] Section 66.021(10)(a), Stats., provides:

No action may be commenced after 60 days from the effective date of any annexation to contest the validity thereof upon any grounds whatsoever, whether denominated procedural or jurisdictional. The validity of any annexation shall, 60 days after the effective date thereof, be conclusively established and may not be attacked collaterally or otherwise questioned.

ty of an annexation for any reason after 60 days from the date of the annexation. This statute appears as part of the general annexation statute that defines the procedure by which a city may annex surrounding territory which it does not own. The statute which governs annexation by ordinance of territory which the city owns—the procedure which was used in the present case—does not include a similar bar. A third statute,[21] governing annexation by referendum and court order, specifically incorporates the 60-day bar of sec. 66.021(10). It thus appears that the legislature intended that the 60-day bar applies only to those annexation statutes which specifically refer to it. The failure to incorporate a similar limitations period in sec. 66.025 similarly demonstrates an intent that challenges to the validity of that type of annexation procedure should not be subject to the 60-day time limit.

■
The defendants' final argument on this issue is that the plaintiffs' long period of silence constitutes a bar to the commencement of this action through the operation of laches. The annexation took place on August 5, 1976. After that date, the defendants conducted a feasibility study for the lake rehabilitation, and received plan approval from the DNR. This action was not commenced until June 1, 1979.

The rule of laches is applicable to actions in equity. *Paterson v. Paterson*, 73 Wis.2d 150, 154, 242 N.W.2d 907, 909 (1976). In order for laches to arise, four factors must be present: (1) There must be an unreasonable delay; (2) The plaintiff must have knowledge of the course of events and must have acquiesced therein; (3) The defendant must lack knowledge that the plaintiff would assert the right on which he bases his suit;

---

[21] Sec. 66.024(7), Stats.

and (4) There must be prejudice to the defendant if the suit is maintained. *Watkins v. Milwaukee County Civil Service Comm.,* 88 Wis.2d 411, 422–23, 276 N.W.2d 775, 780 (1979); *Mutual Federal S & L v. American Med. Services,* 66 Wis.2d 210, 218, 223 N.W.2d 921, 925 (1974).

There is nothing in the record which indicates that the plaintiffs knew at the time the ordinance was adopted that the annexation of the 40 acres in the Town of Lindina was illegal. The defendants contend that the lack of title in Wisconsin Power & Light was of record, so that the plaintiffs should be charged with knowledge of the illegality of the annexation. Laches will not prevail as a defense, however, unless the plaintiffs have actual knowledge of the facts giving rise to their cause of action. Constructive notice is not enough. *Mutual Federal S & L,* 66 Wis.2d at 218, 223 N.W.2d at 921.

A similar argument was made in *Pugnier v. Ramharter,* 275 Wis. 70, 81 N.W.2d 38 (1957). In that case, taxpayers brought a suit to recover illegal expenditures of money made by the town. Laches was asserted as a defense, on the grounds that the expenditures had long been of record. The court stated:

Here the findings do not indicate that the respondent taxpayers knew of the disbursements complained of until a time immediately prior to the commencement of the suit. There is no finding that the electors acquiesced in the payments, nor that objections were raised by them. . . . Notwithstanding that the annual printed reports of income and disbursements of the town distributed at subsequent meetings listed the amounts contributed for charity, it does not appear that the taxpayers of the town generally were apprised of the practice, nor that the respondent taxpayers had notice thereof. *Pugnier,* 275 Wis. at 76, 81 N.W.2d at 42.

Here, too, the trial court made no finding that the plaintiffs had knowledge of the illegality of the annexation at

the time the annexation ordinance was passed, or that they acquiesced in the illegal procedure. We find nothing in the stipulated facts which would indicate that such knowledge existed. We therefore hold that the plaintiffs' case was not barred by laches.

(3) *Standing*

The defendants next assert that the plaintiffs did not meet their burden of showing that they had standing to challenge the ordinance. Specifically, the defendants contend that the plaintiffs failed to show that the city acted illegally and that the plaintiffs were injured by the illegal action.

A taxpayer does not have standing to challenge an ordinance merely because he disagrees with the legislative body. The taxpayer must have sustained, or will sustain, some pecuniary loss before he has standing to challenge the ordinance. *S. D. Realty Co. v. Sewerage Comm.*, 15 Wis.2d 15, 21, 112 N.W.2d 177, 181 (1961). An allegation that the city has spent, or proposes to spend, public funds illegally is, however, sufficient to confer standing on a taxpayer.

Any illegal expenditure of public funds directly affects taxpayers and causes them to sustain a pecuniary loss. This is because it results either in the governmental unit's having less money to spend for legitimate governmental objectives, or in the levy of additional taxes to make up for the loss resulting from the expenditure. Though the amount of the loss, or additional taxes levied, has only a small effect on each taxpayer, nevertheless it is sufficient to sustain a taxpayers' suit. *S. D. Realty Co.*, 15 Wis.2d at 22, 112 N.W.2d at 181.

The defendants argue that the plaintiffs lack standing because the expenditure of public funds as a result of the illegal annexation was not illegal, and that therefore no public funds have been illegally spent. That issue, how-

ever, goes not to standing, but to the merits of the plaintiffs' claim; it is sufficient that they allege illegality in order to have standing.

(4) *Legality of Annexation Ordinance*

The defendants do not argue that Wisconsin Power & Light Co. had record title to the land it deeded to the City of Mauston, and that the annexation was therefore valid. Rather, the defendants contend that it does not matter that not all of Lake Decorah was within the city limits. They read ch. 33, Stats., as a whole to say that a city is authorized to establish a public inland lake protection and rehabilitation district for the purpose of rehabilitating only that portion of a lake which does lie within the city limits.

The defendants believe that if we look to the legislative intent underlying ch. 33, Stats., we will conclude that their reading of the statute is correct. Before we can look to extrinsic aids to determine the legislative intent underlying a statute, however, we must find the statute to be ambiguous. *State v. Kenyon,* 85 Wis.2d 36, 49, 270 N.W.2d 160 (1978). We find no ambiguity in the plain language of the pertinent portion of sec. 33.23:

The governing body of a municipality may by resolution establish a public inland lake protection and rehabilitation district *if the municipality encompasses all the frontage of a lake* within its boundaries. (Emphasis added.)

The statute clearly conditions the ability of a city to form a rehabilitation district upon its having *all* the frontage of a lake within its boundaries. The statute is susceptible of no other interpretation.

It is possible to find ambiguity not only within a statute, but by the interaction of two separate but related statutes. *Kenyon,* 85 Wis.2d at 49, 270 N.W.2d at 166. This is the path by which the defendants would have us

find ambiguity. The defendants point to sec. 33.21, Stats., which reads as follows:

Public inland lake protection and rehabilitation districts may be created for the purpose of undertaking a program of lake protection and rehabilitation of a lake or parts thereof within the district.

The defendants point to an apparent conflict between this statute and sec. 33.23. They read sec. 33.21 as saying that a district may be created for the purpose of rehabilitating a lake which lies within a district or any part of a lake which lies within a district. This, they suggest, is what Mauston attempted to do; to create a district with boundaries commensurate with the city limits for the purpose of rehabilitating that portion of Lake Decorah which was within the district. Because this seems to be authorized by sec. 33.21, but forbidden by sec. 33.23, the defendants assert that an ambiguity exists and that we must consider extrinsic aids to determine the intent of the legislature.

When two statutes are in seeming conflict, it is the duty of the courts to attempt to harmonize them if it is possible to do so in a way which will give each full force and effect. *Glinski v. Sheldon,* 88 Wis.2d 509, 519, 276 N.W.2d 815, 820 (1979). Sections 33.21 and 33.23 can be harmonized in a way that deprives neither of its force and effect.

We do not accept the defendants' interpretation of sec. 33.21, Stats. Rather, we read the statute as if brackets were inserted as follows:

Public inland lake protection and rehabilitation districts may be created for the purpose of undertaking a program of lake protection and rehabilitation [of a lake or parts thereof] within the district.

By reading "or parts thereof" to modify "lake" rather than "district," we interpret the statute to mean that a district may be created for the purpose of rehabilitating a lake or part of a lake. Construed in conjunction with sec. 33.23, the statute thus provides that a district may be created to rehabilitate a lake or part of a lake, as long as the *entire* lake lies within the district.

Construing sec. 33.21, Stats., in this way harmonizes the two statutes and gives both full force and effect. Because we adopt this construction of the statutes, we find that they are not ambiguous and we do not look to extrinsic aids in order to construe them. Accordingly, we hold that because the lake improvement district did not include all the frontage of Lake Decorah within its boundaries, the district was not legally created and the injunction against its undertaking further action as a public body was proper.

(5) *Authority of Circuit Court to Enjoin*

The defendants' final contention is that the circuit court is usurping the function of the DNR by setting the water level of Lake Decorah. The injunction entered by the court does not have that effect. It provides that "Defendant City of Mauston Lake Improvement District is hereby Permanently Enjoined from spending public monies, levying taxes, or otherwise purporting to act as a public body." The injunction does not in any way infringe on the DNR's authority to regulate and control the public waters.

*By the Court.*—Judgment affirmed.