Dale DAWSON, Gudrun Dawson and
Edward Thomas, Plaintiffs-Respondents,

v.

TOWN OF JACKSON, Defendant-Respondent,

TOWN OF CEDARBURG,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2009AP120. Oral argument October 1, 2010.
—Decided July 19, 2011.*

2011 WI 77

(Also reported in 801 N.W.2d 316.)

318

For the defendant-appellant-petitioner there were briefs and oral argument by *Brad M. Hoeft* and *Huiras, Farrell & Antoine, S.C.,* Port Washington.

For the plaintiffs-respondents there was a brief and oral argument by *John M. Bruce* and *Schober Schober & Mitchell, S.C.,* New Berlin.

For the defendant-respondent there was a brief and oral argument by *Daniel L. Sargeant* and *Schloemer Law Firm, S.C.,* West Bend.

An amicus curiae brief was filed by *Lee Turonie,* Shawano, for Wisconsin Towns Association.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *Dawson v. Town of Jackson,* 2010 WI App 24, 323 Wis. 2d 477, 780 N.W.2d 222, affirming a declaratory judgment of the Washington County Circuit Court, Patrick J. Faragher, Judge. The case requires us to interpret the phrase "acting together" in Wis. Stat. § 82.21(2)[1] as it pertains to governing bodies deciding an application to lay out, alter, or discontinue a public highway on or across municipal lines.

¶ 2. The respondents, Dale Dawson, Gudrun Dawson, and Edward Thomas (the Dawsons), applied to the town boards of Cedarburg and Jackson to vacate part of a jointly owned public highway, Wausaukee Road, which is surrounded by land the Dawsons own. On January 9, 2008, the two town boards held a joint meeting to consider the Dawsons' application. The meeting was attended by three of five Cedarburg board members and all five Jackson board members. At the meeting, all five Jackson board members voted in favor of the application to discontinue the road, but the three Cedarburg members voted against it.

¶ 3. On June 20, 2008, the Dawsons sought a declaratory judgment under Wis. Stat. § 806.04 that the joint action of the town boards resulted in discontinu-

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

ance of the road.[2] The circuit court granted summary judgment to the Dawsons, concluding that under § 82.21(2), "acting together" required that all votes at the joint meeting be counted in the aggregate, resulting in discontinuance. On appeal, the court of appeals affirmed the circuit court. *Dawson,* 323 Wis. 2d 477, ¶ 1.

¶ 4. Cedarburg presents three issues for review:

First, does the phrase "acting together" in Wis. Stat. § 82.21(2) require that separate votes taken by two governing bodies in deciding an application to lay out, alter, or discontinue a public highway on or across municipal lines be counted in the aggregate as if the two bodies voted as one?

Second, is certiorari review under Wis. Stat. § 82.15 the prescribed method of reviewing the decisions made at the joint meeting referenced in Wis. Stat. § 82.21(2), and, if so, does this method of review preclude a filing for declaratory judgment under Wis. Stat. § 806.04?

Third, should the Dawsons be equitably estopped from asserting a position "that is inconsistent with their prior actions and representations to the town boards which led up to their joint meeting [on January 9, 2008] to consider Dawsons' application to discontinue the town line road?"

¶ 5. We conclude the following:

---

[2] At the circuit court, Jackson was a named defendant, but it stipulated to the facts alleged by the Dawsons, concurred with the Dawsons' interpretation of the statute, and submitted a brief in support of the Dawsons' motion for summary judgment. Jackson has consistently advanced similar, if not identical, arguments to the Dawsons and appears in this case as a co-respondent.

(a) The phrase "acting together" in Wis. Stat. § 82.21(2) is ambiguous.

(b) The phrase "acting together" does not require that the separate votes taken by two governing bodies in deciding an application to lay out, alter, or discontinue a public highway on or across municipal lines be counted in the aggregate as if the two bodies voted as one.

(c) Wisconsin Stat. § 82.21(2) expects governing bodies such as town boards to come together and cooperate to resolve a joint application, but it does not mandate the creation of a combined board. The approval of both governing bodies is necessary to approve a joint application like the one from the Dawsons.

(d) Wisconsin Stat. § 82.15 contemplates certiorari review under Wis. Stat. § 68.13 as the prescribed method for review of "a highway order, or a refusal to issue such an order." Section 68.13 establishes both the procedure and a time limit for seeking review of a highway order under most circumstances.

(e) Inasmuch as the Dawsons were seeking a determination that Cedarburg's refusal to issue a highway order was not in accordance with law, they should have proceeded under Wis. Stat. § 68.13.

(f) The fact that the circuit court should have dismissed the Dawsons' request for a declaratory judgment as untimely under § 68.13 does not deprive the supreme court of jurisdiction to address an issue of law.

(g) We do not reach the question whether the Dawsons are equitably estopped from asserting a position contrary to their representations prior to the joint meeting because, given our other rulings, we are not required to do so.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 6. Although the parties are not in complete agreement about the facts, the material facts are undisputed. This case arises from the Dawsons' application under Wis. Stat. § 82.21 to discontinue a portion of Wausaukee Road, a town line highway that lies on and across the municipal boundary line of the towns of Cedarburg and Jackson. The Town of Cedarburg (Cedarburg) is located in Ozaukee County; the Town of Jackson (Jackson) is located in Washington County. The Dawsons are owners of all property bordering the affected half-mile portion of the highway. The portion of the road that the Dawsons seek to discontinue comes to a dead end surrounded by their property.

¶ 7. The Dawsons submitted an application to Cedarburg to discontinue a portion of the road in a letter from their counsel dated May 16, 2007. The letter reminded members of the Cedarburg board that the Dawsons had made a similar application to the two boards in 2005. At that time, the Jackson board voted unanimously to vacate the road, but the Cedarburg board, on a split vote, rejected the application. The letter characterized Cedarburg's 2005 vote as falling "short of the votes needed to vacate the roadway."

¶ 8. The letter further explained that the Dawsons had approached the Jackson board recently, and the board had voted on May 10, 2007, to confirm its action two years before. The letter asserted that Cedarburg would be required to publish the appropriate notices and hold a public hearing but that "a mutual meeting" with Jackson "is no longer necessary."

¶ 9. Cedarburg responded to the letter by requesting a joint meeting with Jackson. The Dawsons followed up, on August 30, 2007, with a joint application to

the two towns and a letter containing additional discussion of statutory requirements. Thereafter, the two boards held a joint meeting in Jackson on January 9, 2008. Three of the five Cedarburg board members were in attendance, with two members excused. All Jackson board members were present.

¶ 10. The two boards conducted a public hearing and appear to have engaged in some discussion before taking a recess to confer separately. The boards then voted separately. The three Cedarburg board members present voted not to discontinue the highway; the five Jackson board members voted to support the application.

¶ 11. Following the meeting, Jackson recorded in Washington County a highway order to vacate part of the road. Despite the Dawsons' request, Cedarburg declined to issue a similar order in Ozaukee County. When Lannon Stone Products, Inc. placed a sign on Wausaukee Road indicating that it had been discontinued, Cedarburg issued two citations to the corporation for "erecting a prohibited sign on streets" and for "public nuisance-obstruct/tend to obstruct street." These citations were issued on April 12, 2008.

¶ 12. On June 20, 2008, the Dawsons commenced a declaratory judgment action in the Washington County Circuit Court seeking a declaration that the joint action taken by the boards had discontinued the road and asking that a highway order to that effect be issued and recorded in both counties. The Dawsons filed a motion for summary judgment. Their motion was supported by Jackson. Cedarburg responded, in part, that the declaratory judgment action was precluded by § 82.15, which prescribes certiorari review under Wis. Stat. § 68.13 for a person aggrieved by a town's refusal to issue an order to discontinue a high-

way. The circuit court disagreed and granted summary judgment to the Dawsons determining as a matter of law that the towns, acting together, had authorized discontinuance.

¶ 13. In its written decision, the circuit court interpreted the phrase "acting together" to require the towns to count their votes in the aggregate as if the votes had taken place in a single body. The court determined that the phrase "acting together" was not ambiguous and that to construe the statute in favor of Cedarburg would render the "acting together" language meaningless. The court also rejected Cedarburg's argument that the Dawsons should have sought review under § 68.13 as provided in § 82.15. The court said that certiorari review would not have provided the relief the Dawsons requested. The circuit court did not address Cedarburg's estoppel claim.

¶ 14. Cedarburg appealed, *Dawson*, 323 Wis. 2d 477, ¶ 5, and the Wisconsin Towns Association filed an amicus brief in support of Cedarburg's interpretation of the statute. *Id.*, ¶ 19 n.6. However, the court of appeals affirmed, holding that (1) "[t]he Dawsons properly sought a declaratory judgment rather than certiorari review to clarify the meaning of the term 'acting together' "; (2) Cedarburg had "not demonstrated the required elements for a claim of estoppel on appeal"; and (3) in interpreting § 82.21(2), "the total votes cast must be counted together to determine the result." *Id.*, ¶ 28. The court stated that "[a]ny other interpretation of 'acting together' would be unreasonable and contrary to the plain language of the statute." *Id.*

¶ 15. Cedarburg petitioned this court for review, which we granted on May 13, 2010.

## II. STANDARD OF REVIEW

¶ 16. This case is on appeal from an order granting summary judgment. "We review a summary judgment decision independently, employing the same methodology as the circuit court." *Blunt v. Medtronic, Inc.,* 2009 WI 16, ¶ 13, 315 Wis. 2d 612, 760 N.W.2d 396 (citation omitted). On a motion for summary judgment, we look to whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). The material facts in this case are not in dispute; the issues presented involve questions of law.

¶ 17. The first issue requires us to interpret the meaning of "acting together" under Wis. Stat. § 82.21(2). Statutory interpretation presents a question of law that we review de novo. *State v. Johnson,* 2009 WI 57, ¶ 22, 318 Wis. 2d 21, 767 N.W.2d 207.

¶ 18. The second issue is whether a declaratory judgment under Wis. Stat. § 806.04 is permitted where the legislature has provided a prescribed method of certiorari review in § 82.15 for parties aggrieved by the issuance or refusal to issue a highway order. This analysis not only raises a second question of statutory interpretation but also implicates a question of jurisdiction. *See Master Disposal, Inc. v. Village of Menomonee Falls,* 60 Wis. 2d 653, 659, 211 N.W.2d 477 (1973). We review questions of jurisdiction de novo. *Vidal v. LIRC,* 2002 WI 72, ¶ 14, 253 Wis. 2d 426, 645 N.W.2d 870.

## III. DISCUSSION

¶ 19. Cedarburg raises three issues. We first consider the correct interpretation of the phrase "acting together" in Wis. Stat. § 82.21(2). We next consider whether the prescribed method of certiorari review in § 82.15 precludes a declaratory judgment. We do not reach the issue of equitable estoppel.

### A. "Acting Together" Under Wis. Stat. § 82.21(2)

¶ 20. The principal issue in this case is whether the phrase "acting together" in Wis. Stat. § 82.21(2) requires an aggregation of the votes of two or more municipalities that come together to decide on an application "to lay out, alter, or discontinue a highway on the line between a town and another town, a city, or a village, or a highway extending from one town into an adjoining town, city, or village." Wis. Stat. § 82.21(1)

¶ 21. Chapter 82 of the statutes deals with town highways. In the typical situation, a town board acts on an application "to have a highway laid out, altered, or discontinued" entirely within the borders of that town. The "BASIC PROCEDURES" to be followed in this situation are spelled out in Subchapter II of ch. 82, especially Wis. Stat. §§ 82.10–82.12 and 82.15–82.18.

¶ 22. In other circumstances, town line highways run "on or across the boundary line between a town and another town, a village, or a city." *See* Wis. Stat. § 82.01(9). These circumstances require "SPECIAL PROCEDURES" which are spelled out in Subchapter III of ch. 82, especially Wis. Stat. § 82.21.

¶ 23. The procedure to lay out, alter, or discontinue a town line highway begins in one of two ways. Wis. Stat. § 82.21(1). Six resident freeholders from each

affected municipality may deliver an *application* to the clerk of every town, city, or village that would be affected by the proposal. Wis. Stat. § 82.21(1)(a). In the alternative, the governing bodies of each municipality may introduce a *resolution* to lay out, alter, or discontinue a town line highway. Wis. Stat. § 82.21(1)(b). Both applications and resolutions must contain certain descriptive information. Wis. Stat. § 82.12(2).

¶ 24. "Upon completion of the requirements of sub. (1), the governing bodies of the municipalities, *acting together,* shall proceed under §§ 82.10 to 82.13." *Id.* (emphasis added).

¶ 25. The Dawsons, as well as the circuit court and court of appeals, interpret the phrase "acting together" to require that the votes of the town board members in attendance at a joint meeting be counted in the aggregate.[3] Cedarburg, on the other hand, contends that the phrase "acting together" should be interpreted as encouraging cooperation while still permitting an independent vote on the application by each town board.

¶ 26. Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cnty.,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "If the meaning of the statute is plain, we ordinarily stop the inquiry." *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659. Statutory language is given its common, ordinary, and accepted meaning, except for technical or

---

[3] In its only significant departure from the Dawsons' position, Jackson argues that the words "acting together" necessarily imply that the boards act "as one board." The Dawsons do not adopt this argument.

specifically defined words or phrases. *Kalal,* 271 Wis. 2d 633, ¶ 45. We interpret statutory language in context —that is, "as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.,* ¶ 46 (citing cases).

¶ 27. We do not ordinarily consult extrinsic sources of statutory interpretation unless the language of the statute is ambiguous. *Id.,* ¶ 50. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses. *Id.,* ¶ 47.

¶ 28. As often happens, the language of a statute may not itself provide sufficient guidance to resolve an interpretation issue. A plain reading of the phrase "acting together" does not advance our understanding as to how the towns' votes should be counted. The phrase "acting together" could be interpreted reasonably in at least two senses. The language could be interpreted to mean merely that the governing bodies should meet and try to cooperate without losing their separate identities. On the other hand, it could mean that when the bodies meet, they become in effect a single board for the purpose of handling a highway application. We think the phrase "acting together" is ambiguous in the statutory section in which it appears.

¶ 29. An examination of statutory context is part of the examination of statutory language. Section 82.21(2) references other sections in the same chapter, to-wit: "Upon completion of the requirements of sub. (1), the governing bodies of the municipalities, acting together, *shall proceed under ss. 82.10 to 82.13.*" (Emphasis added.)

In the text, "acting together" precedes resort to these three sections. This statutory context provides helpful, if not dispositive, clues, but it does not eliminate all ambiguity.

¶ 30. The proponents of the aggregate theory of voting are dependent upon a literal reading of the phrase "acting together," but a literal reading could not be applied consistently to all actions taken under the three sections.

¶ 31. For instance, § 82.10(3)-(4) provides notice requirements after the boards receive an application. All parties interpret these subsections as requiring *separate* notices by the towns. In their August 30, 2007 application, the Dawsons told Jackson and Cedarburg, "With the filing of this application, the responsibility now falls *on each respective Town Board* to provide notice of the time and place where they will jointly meet to consider the applications." (Emphasis added.)

¶ 32. This separation is reinforced by statute. Wisconsin Stat. § 985.02 provides that "[e]xcept as otherwise provided by law, a legal notice shall be published in a newspaper likely to give notice in the area or to the person affected." Wisconsin Stat. § 985.05(2) reads: "When any municipality has designated an official newspaper, all legal notices published in a newspaper by such municipality shall be published in such newspaper unless otherwise specifically required by law." The two towns here had different publication requirements under Chapter 985, so that when they published notices, they were not "acting together" in any literal sense.

¶ 33. Similarly, § 82.11(1) instructs the town supervisors to "personally examine the highway . . . that is the subject of an application . . . ." No one suggests that

the town supervisors of Jackson and Cedarburg were required to go to Wausaukee Road at the same time to examine the highway. In other words, the town board members did not examine the highway by literally "acting together."

¶ 34. Furthermore, Wis. Stat. § 82.12 governs highway orders. Subsection (2) reads in part: "If the board determines under sub. (1) to lay out, alter, or discontinue any highway, it shall issue a highway order. *The highway order shall be recorded with the register of deeds for the county in which the highway is or will be located and shall be filed with the town clerk.*" Wis. Stat. § 82.12(2) (emphasis added). Although § 82.12 is one of the statutory sections under which the towns, "acting together," are to proceed, the towns would not be "acting together" in time, place, or manner if they filed respective highway orders.

¶ 35. The parties point to other, unrelated statutory provisions to support their interpretation of "acting together." The Dawsons urge us to consider Wis. Stat. § 990.001, dealing with construction of statutes. Section 990.001(8) provides, "All words purporting to give a joint authority to 3 or more public officers . . . shall be construed as giving such authority to a majority of such officers." To achieve the result the Dawsons desire, this provision would have to be given a more expansive interpretation than it has been given to date. The provision has generally been construed to mean that the absence or disqualification of a member of a body does not prevent the majority of other members from acting. *Karker v. Bd. of Unified Sch. Dist. No. 1,* 51 Wis. 2d 542, 546, 187 N.W.2d 160 (1971); *Rogers v. Draves,* 154 Wis. 23, 26–27, 142 N.W. 127 (1913).

¶ 36. To illustrate, if two of the three board members in attendance from Cedarburg had voted to discon-

tinue the highway, the absence of two other members would not have invalidated Cedarburg's approval of discontinuance. That principle does not determine whether "acting together" means that individual votes from different towns are counted in the aggregate.

¶ 37. For its part, Cedarburg points to Wis. Stat. § 83.42(5) as an example of a highway decision requiring separate approval by *all* affected municipalities. Section 83.42(5) governs the modification of rustic roads and provides that where highways are under the jurisdiction of two or more municipalities, they "may not be designated rustic roads or be withdrawn from the rustic roads system until after approval by: (a) The governing bodies *of all affected municipalities.*" Wis. Stat. § 83.42(5) (emphasis added). This section demonstrates that the legislature has envisioned at least one scenario in which a single municipality holds veto power over highway decisions. However, the language in § 82.21(2) is not as explicit as the language in § 83.42(5), and therefore citation to the rustic road statute does not end our inquiry.

¶ 38. As the court of appeals noted, there is "scant" case law interpreting the words "acting together" in the context of § 83.21(2). *Dawson,* 323 Wis. 2d 477, ¶ 22. In *State ex rel. City of Madison v. Walsh,* 247 Wis. 317, 19 N.W.2d 299 (1945), this court held that the apportionment statute did not require all board members of every affected municipality to attend an apportionment session and that apportionment was to be made by "*a majority of the members from each municipality who attend.*" *Id.* at 320 (quoting Wis. Stat. § 66.03(6) (1943)). The court went on to hold that the term "acting together" did not prevent a town from forfeiting its right to participate by choosing not to attend the apportionment

333

vote, as the statutory provision for apportionment relied on a majority of those in attendance. *Id.* at 320–21.

¶ 39. The Dawsons argue that, similar to *Walsh,* the phrase "acting together" in § 82.21(2) should lead this court to conclude that approval of the application is made by a majority of board members in attendance. According to the Dawsons, because five of the eight total board members who attended the joint meeting voted in favor of the application, the vote resulted in discontinuance.

¶ 40. The ruling in *Walsh* does not support this analysis. Chapter 66 (Municipal Law) of the 1943 statutes shows how the statutory language in § 66.03(5) and (6) should be interpreted. Wisconsin Stat. § 66.0229(1), concerning consolidation, reads in part: "[A] town . . . may be consolidated with a contiguous town, village or city, by ordinance, passed by a two-thirds vote of all *the members of each board or council.*" This language should be compared to the language in the statute cited in *Walsh:* "The apportionment may be made only by *a majority of the members from each municipality* who attend, and in case of committees [from the respective municipalities], *the action must be affirmed by the board or council so represented.*" *Walsh,* 247 Wis. at 320 (quoting Wis. Stat. § 66.03(6)) (emphasis added). The emphasized language demonstrates that *each municipality* must approve the apportionment. If there is any question about that, it is settled in subsection (8): "Appeal to Court. In case the apportionment board is *unable to agree,* the circuit court of the county in which either municipality is situated, may, upon the petition of either municipality, make the adjustment of assets and liabilities." Wis. Stat. § 66.03(8) (1943) (emphasis added). "Acting together" did not mean aggregate voting under the 1943 statute.

¶ 41. The court of appeals looked to a case from Minnesota to bolster its position. *Dawson,* 323 Wis. 2d 477, ¶¶ 24–26. In *Skrove v. Town Board of Towns of Belmont and Christiana,* 154 Minn. 118, 121, 191 N.W. 584 (1922), the Minnesota Supreme Court considered a statute governing the placement of a highway. The Minnesota statute read, "[T]he town board of each of such towns, or a majority of each, *acting together as one board,* shall determine said petition." *Id.* The Minnesota court concluded that under the statute, a majority of each town board need not approve the order, because a majority of the combined boards was sufficient under the statute. *Id.,* ¶ 25. Our court of appeals acknowledged that in § 82.21(2) the language "acting together" was not modified by the phrase "as one board," but it found that such a reading of the statute was foreseeable and not inconsistent with the meaning of the statute. *Id.,* ¶ 26.

¶ 42. We disagree with the court of appeals. To read the words "as one board" into the mandate that the boards act together adds words to the statute that the legislature did not include. We decline to read into the statute words the legislature did not see fit to write. *Cnty. of Dane v. LIRC,* 2009 WI 9, ¶ 33, 315 Wis. 2d 293, 759 N.W.2d 571 ("We will not read into the statute a limitation the plain language does not evidence."). Accordingly, we do not find *Skrove* persuasive or illuminating to our inquiry.

¶ 43. In sum, examining statutory context and some case law in addition to plain language does not eliminate the ambiguity. Therefore, we turn to the statute's legislative history.

¶ 44. Chapter 82 was created by 2003 Wisconsin Act 214. Act 214 contains extensive notes by the Joint Legislative Council's Special Committee on Recodifica-

tion of Town Highway Statutes. Those notes indicate that Wis. Stat. § 82.21 is based on former §§ 80.11(1)-(6) and 80.12(01)-(02)(2001). Note to § 60, 2003 Wis. Act 214.

¶ 45. Former § 80.11 governed highways on town lines where only town boards were involved, while former § 80.12 governed highways on and across town and other municipal boundaries. Former § 80.11(1) read: "Whenever it is considered necessary to lay out, alter, widen or discontinue a highway upon the line between two towns . . . it shall be done by the supervisors of the two towns acting together . . . ." This section can be traced back to the 1870s.

¶ 46. Town line roads have been the subject of state legislation since statehood. *See* Wis. Stat. ch. 16, §§ 63, 64, 65 (1849):

> Whenever it shall be deemed necessary to lay out a highway upon the line between two towns, such highway shall be laid by the supervisors of each of said towns, either upon said line or as near thereto as the situation of the ground will admit; and *they* may vary the same, either to the one side or the other of such line, as *they* may deem necessary.

Wis. Stat. ch. 16, § 63 (1849) (emphasis added).

> *The supervisors of each adjoining town,* upon laying out a highway upon the line between such towns, *shall determine* what part of such highway shall be made and kept in repair by each town, and what share of the damages, if any, shall be paid by each.

*Id.*, § 64 (emphasis added).

> *The supervisors of each such adjoining town shall proceed in all things as is required of the supervisors of one town* in laying out highways in such town . . . and

336

*each town shall have all the rights* and be subject to all the liabilities, in relation to the part of such highway to be made or repaired by such town, as if the same were wholly located in such town.

*Id.*, § 65 (emphasis added).

¶ 47. We read these statutes from 1849 as encouraging cooperation but preserving the independence of each town.

¶ 48. These statutes had been revised by 1878. Section 1272 reads:

Whenever it shall be deemed necessary to lay out, alter, widen or discontinue a highway upon the line between two towns, it shall be done by the supervisors of each of said towns *acting together*, either upon said line, or as near thereto as the situation of the ground will admit; and *they* may vary the same, either on one side or the other of such line, as *they* may deem necessary.

Wis. Stat. ch. 52, § 1272 (1878) (emphasis added).

The application therefor shall be . . . addressed to the supervisors of both towns . . . , the notice of the time and place for meeting to decide upon such application shall be signed by a majority of the supervisors of each town . . . , *a majority of the supervisors of each town* shall meet to decide upon such application *and sign the order* and the award of damages, and in all other things the proceedings shall be the same as are required by law in laying out, altering, widening or discontinuing highways *within a town*.

*Id.*, § 1273 (emphasis added).

¶ 49. Section 1272 shows that the phrase "acting together" has been part of our law on town highways since at least 1878.

337

¶ 50. In *Town of Seif v. Town of Eaton*, 153 Wis. 657, 661, 140 N.W. 319 (1913), this court had occasion to interpret § 1273 of the 1911 statutes. The case involved an effort by the Town of Seif to assign part of the costs of a new town-line bridge to the Town of Eaton after the Town of Seif assumed certain town-line obligations of the Town of Weston, having been created out of the Town of Weston. Although the equitable case for Eaton to pay its fair share of the costs of the bridge was strong, this court rejected any apportionment of costs based in equity, without a new agreement from Eaton. The court observed:

> The statute . . . provides that a majority of the super-visors of one town shall meet with a majority of the supervisors of the other and that they shall make an adjustment to fit the new condition, *in case all agree.* . . . The meeting contemplated . . . is a meeting of at least a majority of the supervisors of one town with a majority of the supervisors of the other, and with authority, *if all agree,* to bind both towns; the result to be evidenced by an order made by them and filed for record in the office of the town clerk in each town.

*Id.* (emphasis added).

¶ 51. The court further noted that there was "no opportunity for the municipality [Eaton] to accept or reject" the bridge payment. *Id.* at 664. Consequently, the importance of the *Seif* case is that, after the phrase "acting together" had been in the Wisconsin highway statutes for more than 30 years, our court stressed the requirement of *agreement* among government bodies.

¶ 52. The court discussed Wis. Stat. § 80.11 (1961) in *Town of Muskego v. Town of Vernon*, 19 Wis. 2d 159, 119 N.W.2d 474 (1963). The issue in *Town of Muskego* was whether Crowbar Road was a town line highway within the meaning of § 80.11. *Id.* at 160. The

court concluded that it was not, because it had not been created by joint action of the towns but rather had been laid out in 1845 exclusively by the road commissioners of the Town of Muskego. *Id.* at 165. Although the case has language helpful to the Dawsons—"a legislative intent to deal with town-line roads laid out as such by the joint action of the majority of supervisors of the town[s]"—that language does not focus squarely on the issue in this case. *Id.* at 164. Moreover, the case validates the Town of Vernon's refusal to participate in an apportionment meeting requested by the Town of Muskego, suggesting municipal independence.

¶ 53. The Dawsons rely on the *Town of Muskego* case, saying that it demonstrates that this court agreed with their interpretation that a majority of the combined boards, rather than a majority of each board, is sufficient to approve a joint application. They then point to the Joint Legislative Council's Prefatory Note to 2003 Wisconsin Act 214 which stated: "There are detailed notes following the sections that indicate the substantive change, if any. If the note does not indicate a substantive change, none is intended. If a question arises about the effect of any modification made by this bill, the special committee intends that the revisions in this bill be construed to have the same effect as the prior statute."

¶ 54. The Dawsons argue that because the notes relevant to Wis. Stat. § 82.21 do not indicate an intent to make a substantive change, the court's interpretation in *Town of Muskego* should continue to control. While the legislative history demonstrates that there was no intent to make a substantive change, the Dawsons' arguments are insufficient to override conflicting evidence in the legislative history.

¶ 55. Finally, we turn to public policy. The practical effect of interpreting "acting together" to mean

counting the votes of the town boards in the aggregate is to undermine the independence and autonomy of municipalities. It also runs the risk of permitting larger municipalities—like cities and villages—to impose their will upon smaller municipalities (usually towns).

¶ 56. By statute, town boards in Wisconsin may have as few as three supervisors and as many as five. Wis. Stat. § 60.20. Villages, on the other hand, may consist of as few as two trustees and as many as six. Wis. Stat. § 61.20. Cities are permitted to determine the number of council members, with an average of six to ten members, but as many as twenty. John A. Martin, *City Councils and Village Boards: What Determines Their Size,* The Municipality, November 1996. Accordingly, the membership of a governing body may vary between two and twenty, depending on the municipality.

¶ 57. This is particularly troublesome since the larger municipalities are likely to have more members. Under the court of appeals' interpretation of "acting together," the municipality with a larger governing membership will be more likely to prevail in dealing with joint applications. While it is true that not all board members will vote in lockstep, the fact remains that under the court of appeals' construction of "acting together," the municipality with the larger board will always have the upper hand.

¶ 58. The Dawsons argue that if votes are not counted in the aggregate in such circumstances, there will never be a decision, because, as here, municipalities may not agree. This argument overlooks the fact that deciding to keep the status quo is still a decision. Moreover, impasse would not be completely avoided through adoption of the Dawsons' construction, as two boards of equal size voting in lockstep would not produce a majority vote to approve an application.

¶ 59. The alternative to the status quo could be quite stark. A majority vote—based purely on the size of a governing board—could "lay out" a new highway or "alter"—that is, expand or move an existing town line highway—over the opposition of a community with a smaller governing board. The municipality with the larger board could initiate these actions through cooperative freeholders, Wis. Stat. § 82.21(1)(a), and dictate the outcome. We note that the municipality could not initiate the process solely by introducing its own resolution, inasmuch as *both* municipalities are required to introduce a resolution under Wis. Stat. § 82.21(1)(b).

¶ 60. We see the rule espoused by the Dawsons as inconsistent with two provisions in Wis. Stat. § 82.11, the section that contemplates a joint meeting. First, subsection (1) calls on a town board to hold a public hearing "to decide, *in its discretion,* whether granting the application or resolution is in the public interest." *Id.* (emphasis added). A community cannot decide anything "*in its discretion*" if it will be outvoted automatically by a community with a larger board. Second, subsections (2)(a) and (b) envision situations where a town official may be required to withdraw from voting because of the code of ethics. The official's withdrawal would immediately disadvantage that town in an aggregate vote if the boards were of equal size.

¶ 61. We are unpersuaded by Jackson's contention that it is unfair to require Jackson to maintain Wausaukee Road, which it voted to discontinue.[4] Significantly, Jackson's argument disregards the possibility that it could meet with Cedarburg to reapportion the responsibility for maintaining the road under § 82.21(4)(b).

---

[4] *Cf. Town of Whitewater v. Town of Richmond,* 204 Wis. 388, 235 N.W. 773 (1931).

Given the extensive history of the towns' disagreement regarding this road, Cedarburg may be willing to agree to reapportionment of the road's maintenance. Even if Cedarburg were unwilling to agree to reapportionment, Jackson could appeal the apportionment under § 82.21(5). Upon appeal, the circuit court could take into account Jackson's vote to grant the discontinuance.

¶ 62. We think it is unlikely that a town will persist in its opposition to an application or resolution without a valid reason. The existence of a veto power does not prevent negotiation and compromise. Conversely, the creation of authority for one community to override another without respect to the merit of their positions is likely to create more conflict than it will prevent.

¶ 63. We hold, therefore, that the phrase "acting together" in Wis. Stat. § 82.21(2) does not require that separate votes taken by two governing bodies in deciding an application to lay out, alter, or discontinue a public highway on or across municipal lines, be counted in the aggregate as if the two boards voted as one. Approval of both boards is necessary to approve a joint application like the one from the Dawsons. If we have failed to assess accurately the intent of the legislature, the legislature is fully empowered to correct our understanding by amending ch. 82.

## B. Propriety of Declaratory Judgment

¶ 64. We next consider whether Wis. Stat. § 82.15 prescribes a method of certiorari review that precludes seeking relief by declaratory judgment. *See* Wis. Stat.

§ 806.04. Under § 82.15, "Any person aggrieved by a highway order, or a refusal to issue such an order, may seek judicial review under s. 68.13. If the highway is on the line between 2 counties, the appeal may be in the circuit court of either county."

¶ 65. Wisconsin Stat. § 68.13 reads as follows:

> Judicial Review. (1) Any party to a proceeding resulting in a final determination may seek review thereof by certiorari within 30 days of receipt of the final determination. The court may affirm or reverse the final determination, or remand to the decision maker for further proceedings consistent with the court's decision.
>
> (2) If review is sought of a final determination, the record of the proceedings shall be transcribed at the expense of the person seeking review. A transcript shall be supplied to anyone requesting the same at the requester's expense. If the person seeking review establishes impecuniousness to the satisfaction of the reviewing court, the court may order the proceedings transcribed at the expense of the municipality and the person seeking review shall be furnished a free copy of the transcript. By stipulation, the court may order a synopsis of the proceedings in lieu of a transcript. The court may otherwise limit the requirement for a transcript.

■■■

¶ 66. Section 68.13 authorizes certiorari review and provides that any party to a proceeding resulting in a final determination—such as the refusal to issue a highway order—may seek certiorari review "within 30 days of receipt of the final determination." *Id.*[5] Statu-

---

[5] The phrase "receipt of a final determination" is not clear in the context of a highway order. It could mean the date that one or more municipalities votes to grant or deny an application or resolution. It could mean the date that a notice of that deter-

tory certiorari includes a review of whether the entity whose decision is being reviewed proceeded on a correct theory of law. *Donaldson v. Bd. of Comm'rs,* 2004 WI 67, ¶ 73, 272 Wis. 2d 146, 680 N.W.2d 762; *Cohn v. Town of Randall,* 247 Wis. 2d 118, 633 N.W.2d 674 (Ct. App. 2001).

¶ 67. Section 82.15 appears to apply to the Dawsons. After all, their complaint asserted that "Cedarburg has refused to issue a highway order," and they requested that the circuit court direct "the Town of Cedarburg to issue a highway order as necessary to discontinue the [] Road."

¶ 68. Thus, Cedarburg argues that the Dawsons should have pursued the certiorari review provided in Wis. Stat. § 82.15 instead of seeking a declaratory judgment. Cedarburg contends that certiorari review is the Dawsons' exclusive remedy. It implies that one reason the Dawsons sought a declaratory judgment is that they missed the filing deadline for certiorari review under Wis. Stat. § 68.13, so that it was no longer available to them.

¶ 69. In the absence of the directive in Wis. Stat. § 82.15, declaratory judgment would be an appropriate avenue of relief. However, the 1995 legislature discarded past practice for appealing a highway order,[6] declined a proposal to permit a general "appeal" to the circuit court,[7] and specified use of the certiorari review

_____

mination is received by an applicant, if a notice is sent. In this case, the Dawsons did not comply with a 30–day time limit under any reasonable interpretation of the statute. Cedarburg voted not to approve the Dawsons' application on January 9, 2008. The Dawsons did not file suit until June 20, 2008.

[6] *Cf.,* Wis. Stat. § 80.17 (1993).

[7] *See* 1995 A.B. 328, authored by Rep. Eugene Hahn.

344

set out in § 68.13.[8] This court has long held that where a method of review is prescribed by statute, "that prescribed method is exclusive." *Hermann v. Town of Delavan*, 215 Wis. 2d 370, 383, 572 N.W.2d 855 (1998); *State ex rel. First Nat'l Bank v. M&I Peoples Bank*, 82 Wis. 2d 529, 538 n.6, 263 N.W.2d 196 (1978); *Master Disposal*, 60 Wis. 2d at 657.

¶ 70. Cedarburg's case for the exclusivity of certiorari review is buttressed by the statutes. We note that § 82.15 is denominated a "basic procedure." That means it applies to all appeals from a highway order, or a refusal to issue a highway order, whether the order or refusal involves a single town, or two towns, or a town and a city, or a town and a village. In short, the appeal process governs much more than an order affecting a town line highway.

¶ 71. The statute on certiorari review limits the time to appeal highway orders. In addition, Wis. Stat. § 82.16 suggests that most highway orders are not open to collateral attack.[9] Thus, a decision on the availability of declaratory judgment in addition to certiorari review would have widespread ramifications.

¶ 72. For the reasons outlined above, we conclude that certiorari review under Wis. Stat. § 68.13 is the

---

[8] 1995 Wis. Act 186.

[9] Wisconsin Stat. § 82.16 provides:

(1) Every order laying out, altering, or discontinuing a highway under this chapter, and any order restoring the record of a highway, shall be presumptive evidence of the facts therein stated and of the regularity of all the proceedings prior to the making of the order.

(2) The validity of an order described in sub. (1), if fair on its face, *is not open to collateral attack,* but may be challenged in an action brought under s. 82.15. (Emphasis added.)

prescribed method of appealing a highway order, or a refusal to issue a highway order, and that, as a practical matter, this means of appeal applied to the Dawsons. They should have utilized certiorari review.

¶ 73. Normally, a party seeking an alternative to a statutorily prescribed method of review must show that the prescribed method is inadequate to resolve the issue presented, *Hermann,* 215 Wis. 2d at 383–84, or inadequate to effect the remedy sought, *Hanlon v. Town of Milton,* 2000 WI 61, ¶¶ 4, 16, 235 Wis. 2d 597, 612 N.W.2d 44.[10] Placing this burden on the complaining party helps to assure that courts will honor the legislative plan for review.

¶ 74. In *Hermann,* this court stated that "as a general rule a court lacks jurisdiction where the plaintiff fails to follow the required statutory procedure." *Hermann,* 215 Wis. 2d at 383. The court then added, however, that this is a "rule of 'policy, convenience and discretion.' " *Id.* (quoting *Ass'n of Career Empls. v. Klauser,* 195 Wis. 2d 602, 612, 536 N.W.2d 478 (Ct. App. 1995)); *see also League of Women Voters v. Outagamie Cnty.,* 113 Wis. 2d 313, 321, 334 N.W.2d 887 (1983) (the general rule that the statutory method of review is exclusive is a matter of policy, convenience and discretion and not a matter of jurisdiction).[11]

---

[10] In *Thorp v. Town of Lebanon,* 2000 WI 60, ¶ 43, 235 Wis. 2d 610, 612 N.W.2d 59, the court noted that it was possible to make an equal protection argument under certiorari review but that "monetary damages are not one of the forms of relief Wis. Stat. § 68.13 authorizes a court to grant."

[11] This principle is derived from the rule that, where there is an administrative remedy available to a party, the party must first exhaust such remedy before seeking judicial relief. *See Nodell Inv. Corp. v. City of Glendale,* 78 Wis. 2d 416, 424, 254

¶ 75. Given the published decision of the court of appeals in this case and the fact that the primary issue briefed and argued by the parties centered on the legal question about "acting together," we have thought it both prudential and necessary to take up the question of statutory interpretation and decide it even though the request for a declaratory judgment should have been denied by the circuit court. Our determination to take up this case should not be interpreted as a green light to evade the legislature's prescribed method of certiorari review for matters involving highway orders.

## IV. CONCLUSION

¶ 76. We conclude that "acting together" in the context of Wis. Stat. § 82.21(2) does not require aggregate counting of votes. While the town boards are required by statute to come together and cooperate to resolve a joint application or a resolution, the statute does not mandate the creation of a new, combined board. Approval of both boards is necessary to approve the joint application.

N.W.2d 310 (1977); *Hermann v. Town of Delavan*, 215 Wis. 2d 370, 383–84, 572 N.W.2d 855 (1998). There have always been exceptions, however, to this rule. As this court noted in *Wisconsin Collectors Asso. v. Thorp Finance Corp.*, "Although there are a number of decisions of this court which relate to the failure to exhaust administrative remedies, none of them actually holds that such failure results in the court's loss of subject-matter jurisdiction." *Wis. Collectors Ass'n. v. Thorp Fin. Corp.*, 32 Wis. 2d 36, 46–47, 145 N.W.2d 33 (1966) (citing cases). Normally matters involving highway orders present cases where the interests of judicial efficiency—policy, convenience, and discretion—require the court to decline to exercise its jurisdiction. However, we have chosen to exercise jurisdiction in this case to answer the question posed by this appeal.

¶ 77. We further conclude that Wis. Stat. § 82.15 contemplates certiorari review under Wis. Stat. § 68.13 as the prescribed method for review of "a highway order, or a refusal to issue such an order." Section 68.13 establishes both the procedure and a time limit for seeking review of a highway order under most circumstances. Inasmuch as the Dawsons were seeking a determination that Cedarburg's refusal to issue a highway order was not in accordance with law, they should have proceeded under Wis. Stat. § 68.13.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 78. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). I join the majority opinion, but I write in concurrence in order to point out that the dissent's characterization of the majority opinion is the opinion of a dissenting justice. The dissent states, "I read the majority as limiting to highway cases the exercise of its discretion to reach the merits when the statutory method of certiorari review has not been met . . . ."[1] The majority opinion does not reach the issue of how its opinion may be used in the future, but rather, decides the case before it, which arose out of a highway order.

¶ 79. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I address two issues: certiorari as the prescribed method of judicial review and aggregating the votes of two town boards.

¶ 80. First, I conclude that the prescribed method of judicial review by certiorari under Wis. Stat. §§ 82.15 and 68.13 precludes the Dawsons from bringing a declaratory judgment action under § 806.04.

---

[1] Chief Justice Abrahamson's dissent, ¶ 13.

¶ 81. Second, although I conclude that the Dawsons are precluded from bringing this declaratory judgment action, I address the majority's interpretation and application of Wis. Stat. § 81.21(2). I reach the same conclusion as the circuit court and court of appeals. The votes of the town board should be aggregated.

I

¶ 82. Wisconsin Stat. §§ 82.15 and 68.13(1) authorize a party to a proceeding relating to highway orders to seek certiorari review in the circuit court within 30 days of receipt of the final determination. *See* majority op., ¶¶ 64–66.

¶ 83. Section 82.15 provides that "[a]ny person aggrieved by a highway order, or a refusal to issue such an order, may seek judicial review under s. 68.13."

¶ 84. Section 68.13(1) establishes judicial review for a broad range of decisions of municipal authorities: "Any party to a proceeding resulting in a final determination may seek review thereof by certiorari within 30 days of receipt of the final determination. The court may affirm or reverse the final determination, or remand to the decision maker for further proceedings consistent with the court's decision."

¶ 85. The Dawsons failed to seek certiorari review within 30 days of receipt of the final determination.

¶ 86. Rather, the Dawsons sought review of the highway order through a declaratory judgment lawsuit filed six months later.

¶ 87. I agree with the majority opinion that "where a method of review is prescribed by statute, 'that prescribed method is exclusive,' " majority op., ¶ 69, and that the Dawsons "should have utilized certiorari review," majority op., ¶ 72.

349

¶ 88. I also agree with the majority opinion that there are certain exceptions to the exclusivity of a prescribed statutory method of certiorari judicial review. For example, the statutorily prescribed method of certiorari judicial review need not be used when it is not plain, speedy, and adequate. *State ex rel. First Nat'l Bank v. M&I Peoples Bank,* 82 Wis. 2d 529, 543, 263 N.W.2d 196 (1978). The statutorily prescribed method of certiorari judicial review need not be used when a party shows that the statutory method is inadequate to resolve the issue presented or is inadequate to effect the remedy sought. Majority op., ¶ 73.[1]

¶ 89. The case law is clear: "**in all but exceptional cases**," the statutorily prescribed certiorari judicial review is the exclusive remedy. *State ex rel. First Nat'l Bank v. M&I Peoples Bank,* 82 Wis. 2d 529, 542, 263 N.W.2d 196 (1978).

¶ 90. Thus the question becomes whether this case is an exceptional case and in what way. The majority opinion does not claim that this is an exceptional case. Nor do the Dawsons. Nor do I.

¶ 91. Nevertheless, the majority opinion concludes that this court should use its discretion to reach the merits of this highway case. Majority op., ¶ 75 & n.11. I read the opinion as not allowing a circuit court to exercise its discretion to reach the merits when a party has failed to adhere in highway cases to the statutory method of certiorari review. I do not know whether the court of appeals may exercise its discretion. I read the majority as limiting to highway cases the exercise of its discretion to reach the merits when the statutory

[1] The circuit court and court of appeals concluded that certiorari was inadequate to effect the remedy the Dawsons sought and allowed the Dawsons to proceed by declaratory judgment. The majority opinion does not take this tack.

350

method of certiorari review has not been met: "this case should not be interpreted as a green light to evade the legislature's prescribed method of certiorari review for matters involving highway orders". Majority op., ¶ 75.

¶ 92. I am concerned that the majority opinion may unnecessarily raise procedural questions for future litigants and the courts. I would not abandon our precedent that a court should adhere to the statutorily prescribed method of certiorari judicial review except in exceptional circumstances.

¶ 93. I conclude that the declaratory judgment relief the Dawsons seek should be denied. Certiorari review is prescribed by statute. No exception applies in the present case.

¶ 94. Nevertheless, because I disagree with the majority opinion's interpretation of Wis. Stat. § 81.21(2), I will briefly comment on that holding of the majority opinion.

## II

¶ 95. I conclude that "acting together" to discontinue a town-line highway under Wis. Stat. § 82.21(2) requires an aggregate vote count of the combined memberships of the affected governing bodies. As does the majority opinion, I will (A) discuss statutory interpretation, including analyzing the statutory text and the text in context; (B) examine the statutory history; and (C) reflect on public policy considerations.

## A

¶ 96. Wisconsin Stat. § 82.21(2), the statute at issue, provides as follows: "Upon completion of the requirements of sub. (1), the governing bodies of the

351

municipalities, acting together, shall proceed under ss. 82.10 to 82.13." Sections 82.10 to 82.13 set forth procedural steps, including the initiation of procedures, notice requirements, lis pendens, examination of the highway, the code of ethics for participants, time of determination, and recording of determination.

¶ 97. Curiously, the way the majority opinion interprets "acting together," the town boards are always acting separately.[2] The majority reads "acting together"

---

[2] The majority fails to recognize that acting together does not mean sacrificing individuality and individuality does not mean sacrificing acting together. The majority opinion calls to mind a poem by Khalil Gibran that I am often asked to read when I officiate at weddings. Gibran eloquently describes how marriage requires partners to act together, yet remain separate throughout their marriage.

"On Marriage"
(*The Prophet,* 1923)

You were born together, and together you shall be forevermore.

You shall be together when white wings of death scatter your days.

Aye, you shall be together even in the silent memory of God.

But let there be spaces in your togetherness,

And let the winds of the heavens dance between you.

Love one another, but make not a bond of love:

Let it rather be a moving sea between the shores of your souls.

Fill each other's cup but drink not from one cup.

Give one another of your bread but eat not from the same loaf.

Sing and dance together and be joyous, but let each one of you be alone,

Even as the strings of a lute are alone though they quiver with the same music.

Give your hearts, but not into each other's keeping.

352

completely out of the statute. What could the legislature have meant by the phrase? It means nothing, says the majority.

¶ 98.　The majority opinion gives nary an example of when the two boards act together. Each board does everything separately, according to the majority opinion, and thus either municipality has ultimate veto power over the other. The majority suggests this reading avoids "absurd or unreasonable results." Majority op., ¶ 26.

¶ 99.　As I read the statute, the phrase "acting together" means the boards are to act as a single group. This interpretation gives a common meaning to the phrase "acting together":　doing something in a single group.

¶ 100.　The majority points to the notice requirements as an example of a procedure that must be accomplished separately. Nothing in the notice requirements, however, suggests that those procedures cannot be accomplished through a collaborative effort of the boards of the affected municipalities.

¶ 101.　Contrary to the majority's assertions, the boards can produce a notice that encompasses the statutory requirements by "acting together" as a single group. "Acting together," the boards can 1) determine the time and place where they will meet to consider the application or resolution; 2) create a legal description of the highway; and 3) set forth a scale map.

¶ 102.　The only difference between the situation in which one board must produce a notice that encom-

For only the hand of Life can contain your hearts.

And stand together yet not too near together;

For the pillars of the temple stand apart,

And the oak tree and the cypress grow not in each other's shadow.

353

passes the statutory requirements and the situation in which two or more boards must do the same is that the boards "acting together" must ensure the notice requirements of each municipality are met. That a notice must be published in two different newspapers does not restrict the town boards from acting together to achieve that result. The two boards acting together can decide on a date of a hearing and the wording of the notice. And the boards, acting together, can then agree that, under Wis. Stat. § 82.10(3)-(4), the notice is placed in the appropriate media outlet prescribed for each municipality. *See* Wis. Stat. § 985.02 (relating to notice requirements).

¶ 103. Thus the boards would be acting together to fulfill the same procedural requirements that can be effectuated separately. I conclude that the applicable procedural steps set forth in Wis. Stat. §§ 82.10 to 82.13 are consistent with the concept that the boards of the affected municipalities will act together as a single group.

¶ 104. In sum, the very words "acting together" and their context in the statute support the conclusion that the boards act together to vote and the votes are aggregated.

¶ 105. I agree with the circuit court. It explained that "[i]f the legislature had meant to authorize an individual town to block an attempt to lay out, alter or discontinue a highway on a town line they could have done so simply by requiring approval by both towns. A particular procedure would not have been necessary. Separate approval is the opposite of acting together."

B

¶ 106. I now turn to the statutory history and case law that the majority opinion sets forth as "legis-

354

lative history." Before the reader gets carried away in the details of this history, the reader should be warned there is no smoking gun here, concealed or visible. All the majority can do is quote a passage here and there from a statute or a case and then say it reads the passage in a certain way to support its conclusion. The majority opinion's bottom line is, and can only be, that there is conflicting evidence in the "legislative history." I agree that the "legislative history" is mixed and inconclusive. It can be interpreted to support either the majority opinion or this dissent.

### C

¶ 107. Finally, I turn to public policy considerations. Through Wis. Stat. § 82.21(2), the legislature has established a process to follow in laying out, altering, or discontinuing town-line roads lying on or across town and municipal lines. If the municipalities agree on what is to be done with the highway, the interpretation of "acting together," as it affects vote counting, does not matter. Indeed, if the communities agree, the statute is unnecessary. Each community could collaborate and follow Wis. Stat. §§ 82.10 to 82.13 separately and get the desired result.

¶ 108. The value of Wis. Stat. § 82.21(2) is that it sets up a procedure to settle disagreements between towns. Aggregating votes is more apt to resolve a dispute than taking separate votes.

¶ 109. Anytime towns disagree, the status quo is maintained under the majority's interpretation. That interpretation has no legislative purpose, as it merely affirms what would happen without a statute. By aggregating votes, the statute has a purpose—it may resolve a stalemate when towns disagree.

¶ 110. The majority points out that municipalities may have a different number of representatives voting for or against a proposal, citing that as a reason to require independent voting. The legislature knew that towns and municipalities may have different numbers of representatives.

¶ 111. The majority opposes the possibility that a larger municipality may have more control than a smaller municipality. The majority does not think this result is good policy and so avoids that result by interpreting the statute to avoid the impact of size discrepancies between municipalities. But it is not within the judiciary's authority to sit in judgment of the wisdom of a statute. A court must interpret the statute, not rewrite it.

¶ 112. These policy determinations are appropriately the legislature's to make. I would encourage the legislature to re-examine this statutory language and unambiguously state its intentions regarding the statute.[3]

---

[3] *See* Wis. Stat. § 13.92:

(2) Duties of the chief. The chief of the legislative reference bureau shall:

(L) In cooperation with the law revision committee, systematically examine and identify for revision by the legislature the statutes and session laws to eliminate defects, anachronisms, conflicts, ambiguities, and unconstitutional or obsolete provisions. The chief shall prepare and, at each session of the legislature, present to the law revision committee bills that eliminate identified defects, anachronisms, conflicts, ambiguities, and unconstitutional or obsolete provisions. These bills may include minor substantive changes in the statutes and session laws necessary to accomplish the purposes of this paragraph. The chief may resubmit to the law revision committee in subsequent sessions of the legislature any bill prepared under this paragraph that was not enacted.

¶ 113. After examining the text of Wis. Stat. § 82.21(2) and its context, the "legislative history," and the public policy, I conclude, as did the circuit court and court of appeals, that the votes are to be aggregated.

¶ 114. For the reasons set forth, I dissent.