¶ 43.
REBECCA GRASSL BRADLEY, J.
{concurring). I join the mandate of the lead opinion reversing the circuit courts' orders and remanding for certiorari review, but I cannot join its reasoning. The legislature imposes upon this court the hopeless task of reconciling Wis. Stat. § 82.15—which permits a person aggrieved by a highway order or a refusal to issue one to seek judicial review under Wis. Stat. § 68.13(1)—with the language of § 68.13, which allows "[a]ny party to a proceeding resulting in a final determination," to seek certiorari review "within 30 days of receipt of the final determination." Here, Pulera was not a "party to a proceeding," there was no set process for sending her (or anyone else) a "final determination," and no procedure assured any person's "receipt" of the final determination. Faced with this conundrum, the lead opinion creates its own procedure governing the deadline for filing a petition for certiorari following the issuance of a highway order. Although the lead opinion attempts to make the language of the statute fit these circumstances, I cannot join its statutory analysis. As the court of appeals explained in its certification to this *696 court, the statutory language enacted by the legislature has "little connection to the highway order process" and lacks any "useful guidance." It is not this court's job to make up the law, but the lead opinion does so because the legislature unmindfully incorporated the statutory language governing municipal administrative appeals (§ 68.13) into the statute governing appeals over highway orders (§ 82.15) where it simply does not fit.
¶ 44. Nonetheless, I join the lead opinion in reversing and remanding because I conclude Pulera's petition is not untimely. None of the three proposed trigger dates work, and Pulera did not receive a "final determination" because the notice she received did not include the map the statute dictates must be included in order to be a "highway order."[1] The time period for certiorari review would not expire until 30 days after Pulera received the "final determination"—that is, a highway order containing the requisite scale map. I would not create the bright-line rule set forth in the lead opinion, but I agree with the mandate. Accordingly, I respectfully concur.
¶ 45. I write separately for three reasons: (1) to urge the legislature to enact a statute specifically governing appeals challenging the issuance of and refusal to issue highway orders; (2) to question whether Pulera was "aggrieved" by the Towns' highway orders or whether Pulera was instead aggrieved by Rock County's alteration of the intersection before the highway orders were issued and recorded with the *697 register of deeds; and (3) to highlight Rock County's apparent disregard for Chapter 82 by reconstructing the roads before obtaining the statutorily-required highway orders.
I
¶ 46. In 2011, this court decided Dawson v. Town of Jackson, 2011 WI 77, 336 Wis. 2d 318, 801 N.W.2d 316, which described the lack of clarity in Wis. Stat. § 68.13(1) regarding highway orders: "The phrase 'receipt of a final determination' is not clear in the context of a highway order." See Dawson, 336 Wis. 2d 318, ¶ 66 n.5. In Dawson, which involved a town's decision to deny a request for a highway order, this court surmised that the 30-day time limit might be triggered by either the date the town votes to "grant or deny" a request involving a highway order or "the date that a notice of that determination is received by an applicant, if a notice is sent." Id. (emphasis added). This court resolved Dawson without deciding the trigger date for the 30-day time limit because, no matter what trigger date applied, Dawson did not meet the 30-day deadline. Id.
f 47. Six years later, this court is called upon again to apply the incongruous words the statutes say control an appeal of a highway order. Read together, the statutes are so unclear that the two circuit courts deciding Pulera's petitions applied different trigger dates. The Walworth County Circuit Court dismissed Pulera's petition as untimely by using the date the Town voted to issue the highway order because Pulera attended the meeting. In contrast, the Rock County Circuit Court dismissed Pulera's petition as untimely because she did not file it within 30 days of receiving "actual" notice of the not-yet-recorded highway order.
*698 ¶ 48. As the court of appeals explained, both interpretations are problematic. Using the town vote as the trigger date ignores the "receipt" language of the statute, disregards the statutory definition of "highway order," and would give notice only to persons in attendance. Using receipt of the unrecorded highway order is problematic because the statutes do not contemplate sending an aggrieved person a copy of the highway order. A receipt-based trigger date could also vary from person to person, depending on when each aggrieved person requested and received the highway order. In the present case, Pulera received the highway orders only because she asked each Town to send them, and what she received did not constitute statutorily-compliant highway orders because they did not include maps.
f 49. Pulera suggests a third possible trigger date: the date the highway orders are recorded with the register of deeds. She argues that recording signifies a final determination and provides a date certain that will be the same for any person aggrieved. The lead opinion adopts Pulera's approach and decides the trigger date is the date the highway order is filed with the register of deeds. Although this resolution may sound reasonable, it does not come from the language of the statute the legislature tells us to apply.
¶ 50. My analysis focuses on the text of the statute: "Any party to a proceeding resulting in a final determination may seek review thereof by certio-rari within 30 days of receipt of the final determination." Wis. Stat. § 68.13(1). "Receipt" is not defined in the statute, but according to Black's Law Dictionary it means "[t]he act of receiving something" or "[a] written acknowledgement that something has been received." Receipt, Black's Law Dictionary (10th ed. 2014). A *699 non-legal dictionary similarly defines "receipt" as "[t]lie act of receiving" or "[a] written acknowledgment that a specified article . . . has been received." Receipt, American Heritage Dictionary (5th ed. 2011). The statutory language says the 30 days begin to run on the date the person is in "receipt of the final determination." How can a person be deemed in receipt of the final determination at the time the highway order is recorded at the register of deeds? The register of deeds is certainly in "receipt" when the document is recorded, but under the plain meaning of "receipt" no aggrieved person could be in "receipt" by virtue of such recording. How could an aggrieved person know the highway order has been recorded? Would this require an aggrieved person to check the register of deeds daily after the town vote? Here, Rock and Walworth Counties each recorded the highway order at the respective register of deeds on different dates: Rock recorded its highway order 55 days after the joint town meeting, and Walworth recorded its highway order 24 days after the joint town meeting. So, should the lead opinion's bright-line rule run 30 days from the first recording or 30 days from the last recording? Would this interpretation be subject to a discovery rule, making "receipt" the date the aggrieved person discovers or should have discovered the highway order has been recorded? Whatever "receipt" means in the statute, the general recording of a document at the register of deeds cannot possibly constitute receipt by any person aggrieved by a highway order. If this is what the legislature had in mind it could have plainly said so.
¶ 51. The legislature has been on notice for at least six years (since this court decided Dawson) that the statutory language it tells us to apply in highway order cases does not work, and I write to urge the legislature to enact a statute outlining timeframes for *700 appealing the issuance of a highway order as well as the denial of a highway order. Perhaps the legislature will adopt the trigger date the lead opinion suggests, but the legislature rather than this court should choose. If the legislature selects the date of recording at the register of deeds for issued orders, it must enact a separate trigger date for cases where the town board refuses to issue a highway order, because refusals do not require a recording at the register of deeds. Clarity in this area of the law is needed, and I respectfully urge the legislature to promptly address it.
II
¶ 52. As a foundational matter, I question whether Pulera was aggrieved by the Towns' retroactive highway orders or whether Pulera was instead aggrieved by Rock County's act of altering the intersection before the Towns issued highway orders and recorded them with the register of deeds. Wisconsin Stat. § 68.06 defines a "person aggrieved" as "any individual... whose rights, duties or privileges are adversely affected by a determination of a municipal authority."[2] By the time the Towns voted to issue the highway orders, the construction project altering the intersection was done. How can these hollow highway orders have aggrieved anyone? The orders were an after-the-fact formality to dot the i's and cross the t's. The highway orders were not the official approval permitting the project to *701 begin; they were ostensibly a way to legitimize what had already been finished a year earlier.
¶ 53. Pulera complains that she was adversely affected by the alteration of the intersection. It appears to me her grievance lies with Rock County, which altered an intersection and discontinued two existing roads without the requisite highway orders.[3] She was not aggrieved by the issuance of paperwork that obviously had no effect on a completed construction project.
III
| 54. A related issue lurks beneath the surface of this case but neither party raised it: did the Rock *702 County Highway Department violate the law by altering an intersection and discontinuing town roads without first obtaining the statutorily-required highway order? The record is limited as to why the Rock County Highway Department ignored the statutorily-required procedures set forth in Wis. Stat. ch. 82, "Town Highways."
¶ 55. Some facts are not in dispute. The intersection at County Highway M and North County Line Road was changed. Town roads were eliminated. North County Line Road runs along the border with Rock County on one side and Walworth County on the other. Construction began in June 2012 and was completed by August 2013.
f 56. Wisconsin Stat. §§ 82.10-.12 set forth the procedures controlling such construction. Sections 82.10(1) and (2) identify who can initiate the process and the documents required to do so. Sections 82.10(3) and (4) provide notice requirements and specify who must receive notice. Section 82.11 requires the town board to "personally examine the highway or proposed highway" and "hold a public hearing to decide, in its discretion, whether granting the application or resolution is in the public interest." Section 82.12 describes the time the town board has to decide whether to issue or not issue the highway order, as well as the recording requirements if a highway order is issued.
¶ 57. Rock County did not follow the statutory process before beginning or completing construction. The County began construction before getting highway orders from either Town. When the Town Board of Richmond sent a letter to the Rock County Highway Department explaining it unanimously voted to leave the intersection as is, it was ignored. The position of the Town Board of Johnstown is not as apparent. What *703 is clear is that neither Town issued highway orders until after construction was completed in August 2013. The statutorily-required highway orders were issued only after the Richmond Town Board and the John-stown Town Board held a joint meeting on September 9, 2014. The Richmond Town Board recorded its highway order approving the new intersection on October 3, 2014. The Johnstown Town Board recorded its highway order approving the new intersection on November 3, 2014. From this record, it appears that the Rock County Highway Department did not follow the statutory procedures in Wis. Stat. ch. 82, performed the construction in violation of the law, and thereby forced the Towns' issuance of highway orders.
¶ 58. Laws are not written to be ignored. People who live and work in these towns travel these roads and are affected by the layout of town highways. The legislature has determined that when town highways are "laid out, altered, or discontinued" certain procedures affording notice and due process to those most affected must be followed. The Rock County Highway Department apparently decided these laws did not apply. Regardless of whether there are facts not in this record to explain Rock County's actions, all county highway departments changing a town's highways should take care to follow the basic procedures and law set forth in Wis. Stat. ch. 82. Failure to follow these procedures deprives people who are adversely affected by the decisions of their governing bodies of any meaningful recourse.
¶ 59. For these reasons, I respectfully concur.

 A "highway order" must include "a legal description of what the order intends to accomplish and a scale map of the land affected by the order." Wis. Stat. § 82.01(3). Requiring the inclusion of a scale map necessitates a written and not an oral order.

 Note that Wis. Stat. § 68.01 provides:
Any person having a substantial interest which is adversely affected by an administrative determination of a governing body, board, commission, committee, agency, officer or employee of a municipality or agent acting on behalf of a municipality as set forth in 68.02, may have such determination reviewed as provided in this chapter.

 I acknowledge that Pulera attempted to challenge the Rock County Board of Supervisors' reversal of its decision precluding the proposed redesign of the intersection, and that her petition seeking judicial review was dismissed on the ground that the County's action was not reviewable because it was a "legislative enactment," see Wis. Stat. § 68.03(1), and because Wis. Stat. § 82.01(6) applies only to cities, villages, and towns. See Pulera v. Coopman, No. 2013AP322, unpublished slip op. (Wis. Ct. App. Nov. 13, 2013). In that case it appears, however, that Pulera only sought review of the Rock County Board of Supervisor's reversal of its initial decision to leave the intersection as it was. That suit did not challenge Rock County's or the Rock County Highway Department's physical alteration of the intersection without any apparent fulfillment of the procedural requirements of Wis. Stat. § 82.21(l)(b), which provides that "[t]he procedure to lay out, alter, or discontinue a highway on the line between a town and another town . . . shall begin only when ... in each affected municipality .. . [t]he town board, city council, or village board introduces a resolution to lay out, alter, or discontinue a town line highway." (Emphasis added.) Although a county board has broad discretion in addressing highway construction projects under Wis. Stat. § 83.03(1), this intersection involved town roads. When town roads are involved, the county must comply with the law set forth in Wis. Stat. ch. 82.